[No. D045553. Fourth Dist., Div. One. Oct. 4, 2005.]

In re LEONARD MOORE, JR., on Habeas Corpus.

COUNSEL

Donovan & Donovan and Casey Donovan for Petitioner.

Bill Lockyer, Attorney General, and Robert M. Foster, Deputy Attorney General, for Respondent.

OPINION

**HUFFMAN, Acting P. J.**—Petitioner Leonard Moore, Jr., was sentenced to a total term of 34 years to life in prison after a jury convicted him on July 24, 2000, of six forcible sex offenses and found he had kidnapped the victim, which substantially increased her risk of harm. On appeal, Moore raised various issues, including whether the trial court erred by admitting a portion of a 911 tape over defense counsel's objections it was not probative and was cumulative, time-consuming, and prejudicial, as well as its admission violated his right of confrontation.

On December 19, 2002, in the unpublished opinion *People v. Meza* (Dec. 19, 2002, D037249), we affirmed Moore's convictions, concluding, among other things, that Moore had waived his confrontation claim on appeal because he had failed to make a timely objection on that ground at trial and his other contentions regarding the 911 tape had no merit. Moore's petition for review was denied by our Supreme Court on February 15, 2003. On October 6, 2003, the United States Supreme Court denied Moore's petition for a writ of certiorari.

On March 8, 2004, the United States Supreme Court issued its decision in *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*), which announced a new rule regarding the effect of the confrontation clause on the admission of hearsay statements in criminal prosecutions. (541 U.S. at p. 71.) On September 27, 2004, citing *Crawford* in support, Moore filed a petition for writ of habeas corpus in the superior court, claiming his trial counsel provided ineffective assistance by failing to object to the admission of the 911 tape on grounds it would violate his Sixth Amendment right to confrontation. The court denied the petition on November 23, 2004.

Moore filed this instant petition for habeas corpus relief on December 17, 2004, raising the same ineffective assistance of trial counsel claim as raised in his earlier petition before the superior court again relying on *Crawford, supra,* 541 U.S. 36. After receiving an informal response, we issued an order on March 4, 2005, to show cause why the relief prayed for in Moore's petition should not be granted. After reviewing the briefing and record filed in this matter, we requested supplemental briefing on whether *Crawford* applies retroactively in this case, or at all in a habeas corpus proceeding. We conclude it does not apply retroactively in this case, and accordingly, we find that Moore has failed to meet his burden of showing he was denied the effective assistance of trial counsel under the law applicable at the time of his trial and deny his petition for habeas corpus relief.

## BACKGROUND

Because our opinion in *People v. Meza, supra,* D037249, sets forth in detail the facts supporting Moore's convictions, we will only briefly summarize them to set the scene for our discussion below. Moore was convicted of committing four of his forcible sex crimes on his victim, Autumn T., on March 9, 2000, in concert with his codefendant Luis Carlos Meza. Earlier that date, Autumn and Joel Holmes had been drinking with a group of friends in Tijuana, Baja California, Mexico. On the way back to their car after crossing the border, Autumn and Holmes got separated from the group and could not find Holmes's car. When Moore and Meza approached them in a car Meza was driving, Holmes asked if they could give them a ride and help them find Holmes's car. Moore and Meza agreed and after about 10 minutes of driving around, Meza stopped and ordered Holmes out of the car at gunpoint.

When Autumn attempted to leave with Holmes, Moore closed the door and told her to put her head down. After getting back in the car, Meza threatened Autumn with the gun and drove to a motel where he and Moore forced her to engage in various sex acts. When they were done, they put Autumn back in the car, drove her to a trolley station and dropped her off. Autumn told the people at the station she had been raped. A man called 911 for Autumn, relaying information she provided.

In defense, Moore claimed Autumn voluntarily went to the motel with him and Meza, consented in many of the sexual acts, and only started crying and becoming hysterical after Meza attempted to have further sexual encounters with her and she complained of pain.

During trial, the court admitted two and one-half minutes of the over-six-minute 911 tape, which was edited to include only the parts where Autumn's voice was audible over her crying along with the voice of a man identified as Douglas on the tape who relayed the dispatcher's questions to Autumn and Autumn's answers back to the dispatcher. Douglas did not testify at trial. Over defense counsel's objections, the court found the tape relevant to the issue of consent because it showed Autumn's demeanor, including her crying, which corroborated her claim she had not consented to the sexual acts, found it to be admissible as an excited utterance and prior consistent statement, both exceptions to the hearsay rule, and found it was more probative than prejudicial. The court also ordered all references to Autumn's crying deleted from the transcript of the redacted tape. Moore's trial counsel did not make any objection to the 911 call based upon the right of confrontation or seek a curative instruction regarding Douglas's statements.

## DISCUSSION

### *The Legal Framework*

Although a defendant will generally be procedurally barred from raising "on habeas corpus an issue that could have been presented at trial" (*In re Seaton* (2004) 34 Cal.4th 193, 200 [17 Cal.Rptr.3d 633, 95 P.3d 896], italics omitted), a defendant has recourse from such bar when his rights are violated at trial and defense counsel does not object. (*Ibid.*) "If counsel's omission falls 'below an objective standard of reasonableness . . . under prevailing professional norms' (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688 [80 L.Ed.2d 674, 104 S.Ct. 2052]), the defendant may assert the error in a habeas corpus petition 'clothed in "ineffective assistance of counsel" raiment.' [Citation.] The defendant would be entitled to habeas corpus relief if there is a 'reasonable probability' [citation] that defense counsel's incompetence in not objecting affected the trial's outcome." (*Seaton, supra*, 34 Cal.4th at p. 200, fn. omitted.)

Thus, even though Moore has dressed his claim of confrontation clause violation, which was not raised at trial in this case, in "ineffective assistance of counsel" clothing, he will only be entitled to habeas corpus relief if he meets his burden of showing that his trial counsel's performance was both professionally deficient and that there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result . . . would have been different.' " (*People v. Ledesma* (1987) 43 Cal.3d 171, 217–218 [233 Cal.Rptr. 404, 729 P.2d 839] (*Ledesma*).) In other words, Moore must show that his counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair before his claim of ineffective assistance of counsel will have merit. (*Lockhart v. Fretwell* (1993) 506

U.S. 364 [122 L.Ed.2d 180, 113 S.Ct. 838] (*Fretwell*).) Where the record on review sheds no light on why counsel failed to do or not do any challenged thing, "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," claims of ineffective assistance of counsel are generally unsuccessful on review. (*People v. Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859].)

### *Retroactivity of* Crawford v. Washington

Before we can proceed to examine whether counsel was deficient in his representation of Moore at trial by failing to object on grounds the admission of the 911 tape segment violated Moore's right to confrontation, we must determine what law was applicable to the admissibility of such evidence. Moore maintains the new rule announced in *Crawford, supra,* 541 U.S. 36 is applicable because it was decided while his case was on direct review and "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ." (*Griffith v. Kentucky* (1987) 479 U.S. 314, 328 [93 L.Ed.2d 649, 107 S.Ct. 708].) Alternatively, he relies on the recent Ninth Circuit Court of Appeals case, *Bockting v. Bayer* (9th Cir. 2005) 399 F.3d 1010, 1021–1024 (*Bockting*), which held by a two-to-one vote that *Crawford* was a new watershed rule of criminal procedure entitled to retroactive application, to assert *Crawford* is applicable to cases like his on collateral review.

As the Attorney General correctly points out in his supplemental briefing, the record clearly shows Moore's case was final and he had exhausted his direct appeal avenues at the time the decision in *Crawford, supra,* 541 U.S. 36, announced a new rule of procedural constitutional law. Because the holding in *Bockting, supra,* 399 F.3d 1010, is not binding on this court, and is in conflict with every other federal circuit court that has addressed the issue of whether *Crawford* is to apply retroactively to a habeas corpus proceeding after direct review is final (see *Mungo v. Duncan* (2nd Cir. 2004) 393 F.3d 327, 334–336 (*Mungo*); *Dorchy v. Jones* (6th Cir. 2005) 398 F.3d 783, 788; *Murillo v. Frank* (7th Cir. 2005) 402 F.3d 786, 790; *Bintz v. Bertrand* (7th Cir. 2005) 403 F.3d 859, 867–869 (*Bintz*); *Evans v. Luebbers* (8th Cir. 2004) 371 F.3d 438, 444–445; *Brown v. Uphoff* (10th Cir. 2004) 381 F.3d 1219, 1227 (*Uphoff*)), we review the matter de novo to determine if the decision in *Crawford* should be given retroactive effect in this case.

■ Generally, when a decision of the United State Supreme Court results in a new rule, i.e., one that "breaks new ground or imposes a new obligation on the States or the Federal Government [citations] . . . [or] was not dictated by precedent existing at the time the defendant's conviction became final"

(*Teague v. Lane* (1989) 489 U.S. 288, 301 [103 L.Ed.2d 334, 109 S.Ct. 1060], italics omitted (*Teague*)), it applies only in limited circumstances "[a]s to convictions that are already final . . . ." (*Schriro v. Summerlin* (2004) 542 U.S. 348 [159 L.Ed.2d 442, 124 S.Ct. 2519, 2522] (*Schriro*).) Although new substantive rules generally apply retroactively, new rules of procedure generally do not. (*Id.* at pp. 2522–2523.) The high court in *Teague* held that new rules of constitutional law are not retroactive to habeas corpus petitions unless they "place[] 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,' " or establish "watershed rules" of criminal procedure. (*Teague, supra,* 489 U.S. at p. 311.) As the United States Supreme Court recently explained in *Schriro*, new rules of procedure "do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of ' "watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' [Citations.] That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' [Citation, italics omitted.] This class of rules is extremely narrow, and 'it is unlikely that any . . . "ha[s] yet to emerge." ' [Citations.]" (*Schriro, supra,* 542 U.S. at p. 352 [124 S.Ct. at p. 2523].)

We agree with the parties here that *Crawford, supra,* 541 U.S. 36, announced a new rule of procedural constitutional law regarding the admission at trial of testimonial hearsay evidence. Before *Crawford, Ohio v. Roberts* (1980) 448 U.S. 56 [65 L.Ed.2d 597, 100 S.Ct. 2531] (*Roberts*) provided the procedure for determining whether the admission of hearsay statements violated the confrontation clause. (See *Roberts,* at pp. 66–70.) The court in *Crawford* noted *Roberts* was inconsistent with its conclusion testimonial hearsay statements offered as evidence against a defendant are admissible under the confrontation clause only if the declarant is unavailable and the defendant had a prior opportunity for cross-examination. (*Crawford, supra,* at p. 60.) In overruling *Roberts,* the court in *Crawford* made a clean break from the line of precedent established by *Roberts* and rejected its continuing application. (*Crawford, supra,* pp. 62–69.)

The conclusion that *Crawford, supra,* 541 U.S. 36, announced a new rule of procedural constitutional law, however, does not end our inquiry whether *Crawford* should be retroactively applied in this case. Such application depends on whether either of the two exceptions to nonretroactivity articulated by the high court in *Teague* are met by *Crawford*. Because *Crawford* did

not place any primary, private conduct beyond the power of lawmaking authorities to proscribe or prohibit any category of punishment currently in use for specific offenses, the first exception of *Teague* clearly does not apply. (See *Saffle v. Parks* (1990) 494 U.S. 484, 494 [108 L.Ed.2d 415, 110 S.Ct. 1257] (*Saffle*); *Teague, supra*, 489 U.S. at p. 311.)

■ Nor do we believe the second exception to nonretroactivity of *Teague* applies. As noted above, this narrowly defined exception is for " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." (*Saffle, supra*, 494 U.S. at p. 495; see *Teague, supra*, 489 U.S. at p. 311.) To qualify as a "watershed rule of criminal procedure," the rule must not only relate to the accuracy of the conviction, but also must " ' "alter our understanding of the bedrock procedural elements" ' essential to the fairness of a proceeding." (*Sawyer v. Smith* (1990) 497 U.S. 227, 242–243 [111 L.Ed.2d 193, 110 S.Ct. 2822], italics omitted.) Recognizing that retroactive application of new procedural rules not existing at the time a conviction became final "seriously undermines the principle of finality which is essential to the operation of our criminal justice system" (*Teague, supra*, 489 U.S. at p. 309), the high court in *Teague* emphasized the rarity of such watershed rules. (*Id.* at p. 313.) "Whatever the precise scope of this exception, it is clearly meant to apply only to a small core of rules requiring 'observance of "those procedures that . . . are 'implicit in the concept of ordered liberty.' " ' [Citations.] As the plurality cautioned in *Teague*, '[b]ecause we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge.' [Citation.]" (*Graham v. Collins* (1993) 506 U.S. 461, 478 [122 L.Ed.2d 260, 113 S.Ct. 892], quoting *Teague, supra*, 489 U.S. at p. 313.)

The United States Supreme Court has repeatedly used *Gideon v. Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792] (*Gideon*), which applied the Sixth Amendment right to counsel to the states and held that indigent defendants have a right to court-appointed counsel in all criminal prosecutions, as an example of a watershed rule. (*Beard v. Banks* (2004) 542 U.S. 406 [159 L.Ed.2d 494, 124 S.Ct. 2504] (*Beard*); *Saffle, supra*, 494 U.S. at p. 495; see also *O'Dell v. Netherland* (1997) 521 U.S. 151 [138 L.Ed.2d 351, 117 S.Ct. 1969].) Since 1989, when the exceptions to nonretroactivity in *Teague, supra*, 489 U.S. 288, were announced, the United States Supreme Court has declined to apply any new rule of criminal procedure retroactively on habeas corpus review when measured against the criteria for the second *Teague* exception. (See *In re Markel* (2005) 154 Wn.2d 262, 270, fn. 2 [111

P.3d 249, 252].) As the high court recently observed in *Beard* regarding the retroactive application of new criminal procedural rules, "we have yet to find a new rule that falls under the second *Teague* exception." (*Beard, supra*, 542 U.S. at p. 417 [124 S.Ct. at pp. 2513–2514].)

*Crawford* does not rise to the level of *Gideon, supra,* 372 U.S. 335, under the watershed rule test. Although it is important, being based upon the confrontation clause which is recognized as a "bedrock procedural guarantee" (*Crawford, supra*, 541 U.S. at p. 42), this does not mean that the rules concerning its implementation necessarily constitute bedrock procedural rules. (See *Johnson v. McKune* (10th Cir. 2002) 288 F.3d 1187, 1199.) *Crawford* "does not introduce any fundamentally new concepts to address the fairness or accuracy of a trial; instead it calls for a complete implementation of a protection that already exists—the Confrontation Clause." (*Bintz, supra*, 403 F.3d at p. 867.) For decades this clause has been recognized as providing an essential component of trials in American courts, the right to confrontation. (*Pointer v. Texas* (1965) 380 U.S. 400, 406 [13 L.Ed.2d 923, 85 S.Ct. 1065].) *Crawford* does not alter this right. Nor does it define new rights or constitutional guarantees. Rather *Crawford* simply sets out a new standard for the admission of hearsay evidence, which may or may not improve the accuracy of convictions. (See *Mungo, supra*, 393 F.3d at pp. 335–336.) Essentially, the difference between the rule in *Crawford* as compared to that in *Roberts* is the manner in which each effectuates a defendant's constitutional right to confrontation. Thus, similar to a rule that shifts the factfinding responsibility from a judge to the jury, a rule that redefines the way a court admits evidence does not "so 'seriously diminish[]' accuracy that there is an ' "impermissibly large risk" ' of punishing conduct the law does not reach." (*Schriro, supra*, 542 U.S. at pp. 355–356 [124 S.Ct. at p. 2525], italics omitted.)

Moreover, violations of the new rule announced in *Crawford, supra,* 541 U.S. 36, are subject to harmless error analysis, and are not considered structural errors as in *Gideon, supra,* 372 U.S. 335. (See *U.S. v. Manfre* (8th Cir. 2004) 368 F.3d 832; *Uphoff, supra*, 381 F.3d at pp. 1226–1227.) It would, therefore, be difficult to conclude that the rule in *Crawford* alters fundamental due process rights. (See *Tyler v. Cain* (2001) 533 U.S. 656, 667, fn. 7 [150 L.Ed.2d 632, 121 S.Ct. 2478]; *U.S. v. Mora* (10th Cir. 2002) 293 F.3d 1213, 1219 [because error under *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] can be excused as harmless where the evidence is overwhelming, it cannot be considered a watershed decision].) Accordingly, we conclude *Crawford* is not a watershed decision under the second *Teague* exception and, therefore, does not apply retroactively to petitions for habeas corpus review like Moore's that collaterally challenge convictions already final on direct appeal.

*Analysis*

■ Because we have determined *Crawford, supra,* 541 U.S. 36, does not apply to Moore's petition, we proceed to analyze his claim trial counsel was ineffective for failing to object to the admission of the 911 tape on the ground such violated his right to confrontation under *Roberts.* The court in *Roberts* recognized the confrontation clause "was intended to exclude some hearsay" (*Roberts, supra,* 448 U.S. at p. 63), but that it allows "hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' " (*Id.* at p. 65, quoting *Snyder v. Massachusetts* (1934) 291 U.S. 97, 107 [78 L.Ed. 674, 54 S.Ct. 330].) The court in *Roberts* stated reliability could be established either through "a showing of particularized guarantees of trustworthiness," or be inferred from the fact the evidence fell "within a firmly rooted hearsay exception." (*Roberts, supra,* 448 U.S. at p. 66.) An excited utterance, or spontaneous statement exception to the hearsay rule has been held not to violate the confrontation clause. (*White v. Illinois* (1992) 502 U.S. 346, 355 [116 L.Ed.2d 848, 112 S.Ct. 736]; *People v. Jones* (1984) 155 Cal.App.3d 653, 664 [202 Cal.Rptr. 289].) Moore acknowledges this fact, conceding the portions of the 911 tape with Autumn's "excited" voice on it did not violate his right to confrontation because it fell within such established exception to the hearsay rule, and noting further she testified at trial and was subject to cross-examination.

Moore only claims the statements of the third party who assisted Autumn with the 911 call violated his confrontation rights and that the failure of his trial counsel to specifically object on such ground, or to ask for some curative instruction regarding the unknown man provided him ineffective assistance. Moore did not raise the issue of ineffective assistance of trial counsel on appeal, and has not provided any declaration of trial counsel as to why he did not object in such matter or seek such curative instruction. Because he did not do so and the record sheds no light on why counsel failed to do so, we can only guess why trial defense counsel did not object to the portion of the 911 tape of which Moore now complains.

Clearly, as the trial court found, the short portion of the tape played for the jury was relevant to the issue of consent, was more probative than prejudicial after being carefully edited by the court, and was admissible for the nonhearsay purpose of showing Autumn's demeanor during the call as well as to corroborate her account of what happened. Autumn's statements, as already conceded by Moore, also fell under the "excited utterance" exception to the hearsay rule. The statements of the unknown man added no information of

his own. Rather he acted as a conduit of information, repeating the dispatcher's questions to Autumn and then relaying her answers to the 911 operator. As such, his statements merely provided some context to Autumn's excited utterances. Because such statements may have been admissible for the purpose of providing a complete picture of Autumn's call to the police (Evid. Code, § 356), we do not believe a reasonably competent attorney would have been ineffective for failing to object to them on right to confrontation grounds.

Moreover, on this record, where Moore had testified he and Meza had taken Autumn to the trolley station after having sex with her at the motel because she had started crying and was hysterical, Moore's trial counsel may have had a tactical reason for not objecting to the brief portion of the tape, which showed Autumn's demeanor was consistent with Moore's testimony. In addition, counsel may have had a tactical reason for not pressing for a curative instruction, which would have only emphasized the evidence again. Moore has simply not shown his counsel's failure to object was not within the reasonable tactical choices of a competent attorney.

However, even assuming there was error in admitting the 911 tape and Moore's trial counsel's performance was thus deficient, he has not shown " 'a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different.' " (*Ledesma, supra,* 43 Cal.3d at pp. 217–218.) Autumn had testified at trial she did not consent to the sex acts and had called 911 right away to report she had been raped. A police officer testified she had been crying and shaking at the time she was interviewed about the crimes. Both Autumn and Holmes testified Moore's codefendant Meza had had a gun during the encounter. Because the totality of this testimony alone shows the elements of nonconsensual sex for Moore's convictions, it is not reasonably probable the trial would have ended differently had Moore's trial counsel objected to the 911 tape on grounds it violated his right to confrontation and the tape had been excluded or admitted with an admonishment to ignore the statements of the unknown man.

We conclude Moore has not met his burden of showing his counsel's performance rendered the result of his trial unreliable or fundamentally unfair. (*Fretwell, supra,* 506 U.S. 364; *Ledesma, supra,* 43 Cal.3d at pp. 217–218.) Therefore, Moore's claim of ineffective assistance of counsel fails and we deny his petition for habeas corpus relief.

## DISPOSITION

The petition is denied.

Haller, J., and Aaron, J., concurred.