[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1393 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1394 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1395 
OPINION
The trial court granted defendant Jalal Khalid Saade's petition for writ of habeas corpus, ruling that the decision of the United States Supreme Court in Cunningham v. California (2007) 549 U.S. 270 [166 L.Ed.2d 856,127 S.Ct. 856] (Cunningham) applied retroactively to defendant's aggravated term sentence for first degree burglary, even though defendant's sentence was final when Cunningham was decided.
 We reverse the judgment, and reinstate defendant's original sentence.Cunningham does not apply retroactively to sentences for which all avenues of direct appeal have been exhausted. Our conclusion is not altered by the recent decision of the United States Supreme Court inDanforth v. Minnesota (2008) 552 U.S. ___ [169 L.Ed.2d 859, 128 S.Ct. 1029] (Danforth), which held that states are free to give broader retroactive effect to new federal constitutional rules of criminal procedure than would otherwise be available under the high court's analysis in Teaguev. Lane (1989) 489 U.S. 288 [103 L.Ed.2d 334, 109 S.Ct. 1060] (Teague). *Page 1396 
 On collateral review, California courts have applied a federal test (most recently Teague) where the decision being analyzed for retroactivity was a United States Supreme Court decision based on a federal constitutional right. But where a state court decision founded on a state-based right is the subject of the retroactivity inquiry, California courts have applied the test first set forth in In re Johnson
(1970) 3 Cal.3d 404, 410 [90 Cal.Rptr. 569, 475 P.2d 841] (Johnson). We conclude the retroactivity analysis under either Teague or Johnson
arrives at the same result: Cunningham is not retroactive. Thus, the permission granted by Danforth, allowing us to grant broader relief on habeas corpus by applying state law to determine the retroactivity ofCunningham, does not assist defendant's cause.
 PROCEDURAL BACKGROUND In July 2003, a jury convicted defendant of first degree burglary (Pen. Code, §§ 459, 460, subd. (a)) and cutting a utility line (Pen. Code, § 591). In August 2003, the trial court sentenced him to the aggravated term of six years in state prison. The upper term was based on the court's finding that the manner in which defendant carried out the crime indicated planning and sophistication because defendant "had in his possession items to commit the offense including gloves, mask, flashlight, dark clothing, pepper spray, and items used in the security profession."
 Defendant appealed, contending his sentence violated the Sixth andFourteenth Amendments to the United States Constitution under the decisions of the United States Supreme Court in Blakely v. Washington
(2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (Blakely) andApprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435,120 S.Ct. 2348] (Apprendi). In Apprendi, the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Apprendi, at p. 490.) InBlakely, the United States Supreme Court held that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Blakely, at p. 303, italics omitted.)
 On June 28, 2005, we affirmed defendant's conviction in an unpublished opinion. (People v. Saade (June 28, 2005, G032844) [nonpub. opn.].) We concluded defendant's sentence did not violate his Sixth Amendment jury trial right under Blakely. In doing so, we relied on People v. Black
(2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (Black I), where the California Supreme Court held that "judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive *Page 1397 terms under California law does not implicate a defendant's Sixth
Amendment right to a jury trial." (Id. at p. 1244.)
 On January 22, 2007, in Cunningham, supra, 549 U.S. 270, the United States Supreme Court overruled Black I and held that "California's determinate sentencing law (DSL) violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth
Amendments to the United States Constitution by assigning to the trial judge, rather than the jury, the authority to make the factual findings that subject a defendant to the possibility of an upper term sentence." (People v. Black (2007) 41 Cal.4th 799, 805 [62 Cal.Rptr.3d 569,161 P.3d 1130] (Black II).)
 The following month, defendant filed a petition for writ of habeas corpus. Defendant argued his sentence violated his Sixth Amendment right under Cunningham because it was imposed based on facts found true by the sentencing judge rather than by a jury. The trial court agreed and concluded Cunningham applied retroactively to defendant's case. The court granted the petition, vacated defendant's sentence, and directed the sentencing judge "to conduct a new sentencing hearing in compliance withCunningham. . . ."
 We reverse the judgment and hold Cunningham does not apply retroactively to sentences for which all avenues of direct appeal had been exhausted before the Cunningham decision was issued. Defendant's conviction was final in November 2005, well before Cunningham was decided.[1]
 DISCUSSION The issue before us is whether the rule announced in Cunningham should apply retroactively to defendant's case.[2] Our review is de novo. (Inre Serrano (1995) 10 Cal.4th 447, 457 [41 Cal.Rptr.2d 695, 895 P.2d 936] [where the lower court rules on a petition for writ of habeas corpus without conducting an evidentiary hearing, the standard of review is de novo].)
 In Teague, supra, 489 U.S. 288, the United States Supreme Court held that, as a general rule, "new constitutional rules of criminal procedure" will not be applied retroactively to cases which were final "before the new *Page 1398 rules are announced." (Id. at p. 310.) "Under Teague, the determination whether a constitutional rule of criminal procedure applies to a case on collateral review" requires the court to determine if "the rule is actually `new.'" (Beard, supra, 542 U.S. at p. 411.) "[I]f the rule is new, the court must consider whether [the rule] falls within either of the two exceptions to nonretroactivity." (Ibid.) "A new rule applies retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a `"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" (Whorton v. Bockting (2007) 549 U.S. ___, ___ [167 L.Ed.2d 1, 127 S.Ct. 1173, 1180] (Whorton).)
 Numerous courts — including the California Courts of Appeal — have applied the Teague analysis on collateral review to determine whether a new federal constitutional rule of criminal procedure applies retroactively. (See In re Moore (2005) 133 Cal.App.4th 68, 75-76 [34 Cal.Rptr.3d 605] [applying Teague analysis to determine whetherCrawford v. Washington (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354] (Crawford) would be given retroactive effect]; In re Consiglio (2005)128 Cal.App.4th 511, 514 [27 Cal.Rptr.3d 167] [citing Schriro v.Summerlin (2004) 542 U.S. 348, 352 [159 L.Ed.2d 442, 124 S.Ct. 2519] (Schriro), which relied on Teague, in deciding whether Blakely, supra,542 U.S. 296 would be given retroactive effect]; see also 4 Witkin 
Epstein, Cal. Criminal Law (3d ed. 2000) Introduction to Criminal Procedure, § 11, p. 18 [collecting federal cases].) And the parties briefed the issue using the Teague analysis.
 But at oral argument, defendant brought to our attention Danforth,supra, 552 U.S. ___ [128 S.Ct. 1029], a case decided by the United States Supreme Court a few days earlier. In Danforth, a jury convicted the defendant of criminal sexual conduct with a minor. (Id. at p. ___ [128 S.Ct. at p. 1033].) At trial, the minor did not testify; instead, the jury watched a videotaped interview with the child. (Ibid.) After the defendant's conviction became final, the United States Supreme Court decided Crawford, supra, 541 U.S. 36, which announced a "`new rule' for evaluating the reliability of testimonial statements in criminal cases." (Danforth, at p. ___ [128 S.Ct. at p. 1033].) The defendant then filed a petition for writ of habeas corpus in the Minnesota state court, arguing that the admission of the videotape violated his Sixth Amendment right to confront witnesses against him as outlined in Crawford. The Minnesota trial court ruled Crawford would not be applied retroactively. On appeal, the Minnesota Supreme Court performed the Teague analysis and agreed with the trial court, concluding Crawford could not be retroactively applied to the defendant's case. (Danforth, at pp. ___-___ [128 S.Ct. at pp. 1033-1034].) The court also determined it could not retroactively apply Crawford to a broader class of cases than the limited class permitted by Teague. (Danforth, at p. ___ [128 S.Ct. at p. 1033].) *Page 1399 
 The United States Supreme Court reversed. It held that "the Teague
decision limits the kinds of constitutional violations that will entitle an individual to relief on federal habeas, but does not in any way limit the authority of a state court, when reviewing its own state criminal convictions, to provide a remedy for a violation that is deemed `nonretroactive' under Teague." (Danforth, supra, 552 U.S. at p. ___ [128 S.Ct. at p. 1042], italics added.) But Danforth did not hold that theTeague framework for determining retroactivity cannot be applied in state courts. Danforth merely clarified that Teague had "considered what constitutional violations may be remedied on federal habeas" but not "whether States can provide remedies for violations of these rights in their own postconviction proceedings." (Danforth, at p. ___ [128 S.Ct. at p. 1038].) Thus, under Danforth, states are free either to adopt the Teague analysis as part of state law or to adopt a standard providing greater retroactive relief than available under Teague.
 The California Supreme Court has neither expressly adopted nor expressly rejected the Teague analytical framework where the new rule of criminal procedure is based on the federal Constitution. Our high court has, however, suggested by negative implication that the United States Supreme Court's retroactivity analysis would apply where the new rule of criminal procedure is based on the federal Constitution. (People v.Murtishaw (1989) 48 Cal.3d 1001, 1012-1013 [258 Cal.Rptr. 821,773 P.2d 172] (Murtishaw) [justifying departure from federal retroactivity standard for cases on direct review because the new rule was based on state law, not the federal Constitution or federal judicial supervisory power]; People v. Carrera (1989) 49 Cal.3d 291, 327 [261 Cal.Rptr. 348, 777 P.2d 121] [same].) And, as noted above, California Courts of Appeal have utilized the Teague analysis to determine retroactivity of new federal constitutional rules of criminal procedure on collateral review.
 Moreover, nearly 20 years before the United States Supreme Court's decision in Teague, the California Supreme Court adopted the then extant United States Supreme Court standard for determining the retroactivity of a new rule based on the federal Constitution. In Johnson, supra,3 Cal.3d 404, our high court considered whether a United States Supreme Court decision should be applied retroactively in a state habeas corpus proceeding. Johnson held that the retroactivity of a new rule "is to be determined by `"(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."`" (Id. at p. 410.) TheJohnson test was taken verbatim from Desist v. United States (1969)394 U.S. 244, 249 [22 L.Ed.2d 248, 89 S.Ct. 1030], a (now outdated) United States Supreme Court case governing when decisions should be applied retroactively on direct review, even though the issue in Johnson *Page 1400 was raised in a state habeas corpus proceeding.[3] Perhaps significantly, the Johnson court adopted the federal retroactivity test even though, presaging Danforth by nearly 40 years, it recognized that "the states are free to give greater retroactive impact to a decision than the federal courts choose to give. . . ." (Johnson, at p. 415, citations omitted.)
 Although the Johnson test was based on a United States Supreme Court decision which has since been superseded, California courts have uniformly applied the Johnson test on collateral review where the issue is the retroactivity of a new rule based on state decisional or statutory law.[4] (See In re Joe R. (1980) 27 Cal.3d 496, 510-511 [165 Cal.Rptr. 837, 612 P.2d 927] (Joe R.) [applying Johnson test and concluding In re Scott K. (1979) 24 Cal.3d 395, 403-404 [155 Cal.Rptr. 671, 595 P.2d 105] (Scott K.), where our Supreme Court held, under California's Constitution, that a father's consent could not justify a warrantless search of a locked toolbox in his minor son's bedroom, did not apply retroactively]; In re Pratt (1980)112 Cal.App.3d 795, 860-861 [170 Cal.Rptr. 80] (Pratt) [applyingJohnson test and concluding Barber v. Municipal Court (1979) 24 Cal.3d 742,751-752 [157 Cal.Rptr. 658, 598 P.2d 818], where the California Supreme Court held that the right to counsel guaranteed by the California Constitution is violated when a state agent is present at a confidential attorney-client conference, did not apply retroactively].)
 Thus, California courts have applied the Johnson test on collateral review to determine the retroactivity of a state-created right and applied Teague to determine the retroactivity of a right based on the federal Constitution. Our high court, however, has never held thatJohnson is not an appropriate tool *Page 1401 to determine whether a newly announced federal right applies retroactively. And Danforth allows us to apply California law to determine whether Cunningham should be given broader retroactive effect than would be available under Teague. Whether Danforth will cause our Supreme Court to depart from the Teague analysis currently utilized by the California Courts of Appeal when determining whether a new rule, based on a federal constitutional right, is retroactive on collateral review, is not yet known. Our high court may decide to adopt the Teague
formulation as the law of California, much as it did in Johnson, where it adopted the then federal standard, even while recognizing it could, as a matter of state law, give broader relief on collateral review of final judgments. Or our Supreme Court may decide it prefers the Johnson
formulation as a rule now well embedded as part of our state law. Or it may ultimately adopt a rule that differs from both Teague and Johnson. We think it more likely, however, that the California Supreme Court will adopt either Johnson or Teague as the better or more appropriate rule, and not manufacture still a third rule. Accordingly, we analyze the retroactivity issue in defendant's case separately under both theJohnson and Teague formulations to determine (1) whether Johnson would provide retroactive relief not available under Teague and (2) whether under either Johnson or Teague defendant should obtain retroactive relief.
Under the Johnson Formulation, Cunningham Is Not Retroactive
 Our first task under Johnson is to determine whether Cunningham
announced a new rule. (Johnson, supra, 3 Cal.3d at p. 410; see alsoDonaldson v. Superior Court (1983) 35 Cal.3d 24, 36 [196 Cal.Rptr. 704,672 P.2d 110] (Donaldson).) This requires no nice distinction between direct and collateral review. California law on this threshold issue is to be found primarily in cases on direct review or not yet final. Under California law, a rule or decision is "new" if it involves a "`clear break with the past.'" (Guerra, supra, 37 Cal.3d at p. 401.) There is a "`clear break with the past'" only "when the decision (1) explicitly overrules a precedent of [the California Supreme Court] [citation], or (2) disapproves a practice impliedly sanctioned by prior decisions of [the California Supreme Court] [citation], or (3) disapproves a longstanding and widespread practice expressly approved by a near-unanimous body of lower-court authorities [citation]." (Ibid.; see also Donaldson, supra, 35 Cal.3d at p. 37.)
 Cunningham is unquestionably "new" for purposes of the Johnson
retroactivity test because it "explicitly overrule[d]" Black I, "a precedent of [the California Supreme] court." (Guerra, supra,37 Cal.3d at p. 401.) In no uncertain terms, Cunningham overruled BlackI and held that California's determinate sentencing law violates a defendant's Sixth and Fourteenth Amendment right to a jury trial to the extent it allows a judge to sentence a *Page 1402 defendant to an upper term based on facts found by the court and not by a jury beyond a reasonable doubt. (Black II, supra, 41 Cal.4th at p. 805.) As such, Cunningham announced a "new" rule of criminal procedure.
 The retroactivity of a new rule under Johnson "is to be determined by `"(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."'" (Johnson, supra, 3 Cal.3d at p. 410.) But the first factor of the Johnson test — the purpose of the new rule — is the crucial factor in determining retroactivity: "[T]he factors of reliance and burden on the administration of justice are of significant relevance only . . . after the purpose of the new rule is considered." (Ibid.; see also Guerra, supra, 37 Cal.3d at pp. 401-402.)
 Under Johnson, "the more directly the new rule in question serves to preclude the conviction of innocent persons, the more likely it is that the rule will be afforded retrospective application. Further, if the rule relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent, it will apply retroactivelyregardless of the reliance of prosecutors on former law, and regardless
of the burden which retroactivity will place upon the judicial system." (Johnson, supra, 3 Cal.3d. at p. 413, italics added.) "[T]he most consistent application of this principle [of applying new rules retroactively] has been in cases in which the primary purpose of the new rule is to promote reliable determinations of guilt or innocence." (Guerra, supra, 37 Cal.3d at p. 402.) Therefore, and in accordance withJohnson, a California court will, on collateral review, give retroactive effect to a new rule where it "vindicat[es] a right which is essential to a reliable determination of whether an accused should suffer a penal sanction." (Johnson, at p. 411.)
 Several California courts have applied the Johnson test on collateral review and have concluded the purpose of a new rule militates against retroactive application. (See Joe R., supra, 27 Cal.3d at p. 512 [the aim of the exclusionary rule in Scott K. was "not to protect the integrity of the factfinding process but to deter invasion of minors' property and privacy rights"]; Pratt, supra, 112 Cal.App.3d at pp. 860-861 [rule that a defendant's right to counsel is violated when a state agent is present at a confidential attorney-client conference did not apply retroactively; the presence of FBI "informants in the defense camp had as much effect on whether or not defendant . . . was afforded a fair trial . . . as did the furniture in the areas where the discussions were conducted"]; see also In re Lopez (1965) 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380] ["new interpretations of constitutional rights have been, and should be, applied retroactively only in those *Page 1403 situations in which such new rules protect the innocent defendant against the possibility of conviction of a crime he [or she] did not commit . . ."].)[5]
 The rule in Cunningham does nothing to preclude the conviction of an innocent defendant or, put another way, to "vindicat[e] a right which is essential to a reliable determination of whether an accused should suffer a penal sanction." (Johnson, supra, 3 Cal.3d at p. 411.) Cunningham does not "promote reliable determinations of guilt or innocence" (Guerra,supra, 37 Cal.3d at p. 402) — it only prescribes the procedure for determining the punishment a defendant receives after he or she is found guilty. As such, Cunningham's purpose is "collateral to or relatively far removed from the reliability of the fact-finding process at trial." (Johnson, at pp. 411-412.) Thus, under the Johnson retroactivity analysis, the purpose of the Cunningham rule points plainly toward prospectivity and we need not consider the factors of reliance and burden on the administration of justice to conclude that Cunningham does not apply retroactively. (See Guerra, supra, 37 Cal.3d at pp. 401-402.)
Under the Teague Formulation, Cunningham Is Not Retroactive
Under Teague, the threshold question again is whether Cunningham
announced a "new rule" or merely reiterated an "old rule." (Teague,supra, 489 U.S. 288, 311; Whorton, supra, 549 U.S. at p. ___ [127 S.Ct. at p. 1181].) Looking now to federal law to determine whether a rule is "new" under Teague, we first ascertain when defendant's conviction became final. (Beard, supra, 542 U.S. at p. 411.) Then we "assay the legal landscape" as of the date when defendant's conviction became final and ask "`whether the rule later announced in [Cunningham] was dictated by then-existing precedent — whether, that is, the unlawfulness of [defendant's sentence] was apparent to all reasonable jurists.'" (Id. at p. 413.) *Page 1404 
 Defendant's conviction became final on November 29, 2005. Under Teague, we examine the "legal landscape" in 2005 to determine whether the rule inCunningham was dictated by then existing precedent, or, put another way, whether the result reached in Cunningham was "`apparent to all reasonable jurists'" in 2005. (Beard, supra, 542 U.S. at p. 413.) The answer is no. For California courts, Black I, supra, 35 Cal.4th 1238, defined the legal landscape in 2005. Five months before defendant's conviction became final, Black I held California's determinate sentencing law did not violate the Sixth Amendment under the decisions in Apprendi and Blakely.(Black I, at p. 1254.) When our high court decided Black I, only one justice dissented. (See id. at p. 1264 (dis. opn. of Kennard, J.).) And when the United States Supreme Court issued its opinion in Cunningham, three justices dissented. (Cunningham, 549 U.S. at pp. ___-___ [127 S.Ct. at pp. 872-873] (dis. opns. of Kennedy, J. and Alito, J., both joined by Breyer, J.).) We are not prepared to say that six of the seven justices of the California Supreme Court and three of the nine justices of the United States Supreme Court were "[un]reasonable jurists." Thus, we must conclude the result reached in Cunningham was not dictated by existing precedent in 2005, when defendant's conviction became final, nor was it apparent to all reasonable jurists in 2005. (See Beard, supra,542 U.S. at pp. 414-415; U.S. v. Cruz (9th Cir. 2005) 423 F.3d 1119, 1120.)
 Defendant nevertheless argues the relevant "legal landscape" for retroactivity purposes consists solely of United States Supreme Court precedent. And because the legal landscape, according to defendant, consists only of United States Supreme Court cases, Cunningham did not announce a new rule because Apprendi and Blakely were part of the "legal landscape" when Cunningham was decided. Citing Graham v. Collins (1993)506 U.S. 461, 468 [122 L.Ed.2d 260, 113 S.Ct. 892] (Graham), defendant argues the United States Supreme Court in that case cited only its own precedent when it defined the "legal landscape" and, as a result, the "legal landscape" for purposes of the retroactivity analysis consists only of United States Supreme Court decisions. Graham does not advance defendant's argument. There, the United States Supreme Court held Penryv. Lynaugh (1989) 492 U.S. 302 [106 L.Ed.2d 256, 109 S.Ct. 2934], did not apply retroactively, in part because it would "have been anything but clear to reasonable jurists [when defendant's conviction became final] that [his] sentencing proceeding did not comport with the Constitution." (Graham, supra, 506 U.S. at p. 468.) Nothing stated in the Graham opinion even remotely stands for the proposition that the "legal landscape" for retroactivity purposes is limited to United States Supreme Court precedent. *Page 1405 
 Moreover, eliminating the decisions of the California Supreme Court — including Black I — from the "legal landscape" of 2005 would require us to ignore decisions of the California Supreme Court, which we are bound to follow unless overruled by the United States Supreme Court. (AutoEquity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) It would also contravene the explicit directions given by the United States Supreme Court in Butler v.McKellar (1990) 494 U.S. 407 [108 L.Ed.2d 347, 110 S.Ct. 1212]. InButler, the court explained "[t]he `new rule' principle therefore validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." (Id. at p. 414, italics added.)
 Having concluded that Cunningham announced a new rule, we apply the retroactivity rules under Teague. A new rule applies retroactively underTeague only if "(1) the rule is substantive or (2) the rule is a `"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" (Whorton, supra, 549 U.S. at p. ___ [127 S.Ct. at p. 1180]; see also Schriro, supra,542 U.S. at p. 351.) A rule is substantive "if it alters the range of conduct or the class of persons that the law punishes." (Schriro, at p. 353.) A rule is procedural if it "regulate[s] only the manner ofdetermining the defendant's culpability." (Ibid.) Cunningham's holding is undoubtedly procedural because it does not alter the range of conduct or the class of persons punished by the law. It affects only the manner in which a defendant's sentence is determined. (See, e.g., Schriro, at p. 353 ["[r]ules that allocate decisionmaking authority [between a judge and a jury] are prototypical procedural rules . . ."]; People v. Amons (2005)125 Cal.App.4th 855, 864-865 [22 Cal.Rptr.3d 908] (Amons) [Blakely
announced "a procedural rule that affects only the manner of determining the defendant's punishment"].)
 A procedural rule cannot be applied retroactively in a collateral attack unless "it is a `"watershed rul[e] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'" (Whorton, supra, 549 U.S. at p. ___ [127 S.Ct. at p. 1181].) Because the exception for watershed rules of criminal procedure is "`extremely narrow'" numerous courts have rejected claims that a new rule is a watershed rule. (Id. at pp. ___-___ [127 S.Ct. at pp. 1181-1182] [citing cases].) "[T]o qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent `an "`impermissibly large risk'"' of an inaccurate conviction. [Citations.] Second, the rule must `alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" (Id. at p. ___ [127 S.Ct. at p. 1182].) *Page 1406 
Cunningham did not announce a watershed rule. Cunningham affects the length of a defendant's sentence — it does not affect the validity of the underlying conviction. That Cunningham "shifts some factfinding duties" during sentencing from a judge to a jury "does not implicate the intrinsic reliability and fundamental fairness of sentencing proceedings." (Amons, supra, 125 Cal.App.4th at p. 866 [Blakely did not announce a watershed rule]; see also Neder v. United States (1999)527 U.S. 1, 15 [144 L.Ed.2d 35, 119 S.Ct. 1827].) A defendant can obtain a fair and accurate trial without the rule in Cunningham because the rule announced in that case "`"merely limits the potential penalty to be imposed on [an undoubtedly] guilty defendant."`" (In re Consiglio, supra,128 Cal.App.4th at p. 516.)
Although Phrased Differently, Johnson and Teague Converge to the SameResult
 As discussed above, the Johnson test focuses on the purpose of the new rule and whether that purpose is to "preclude the conviction of innocent persons" (Johnson, supra, 3 Cal.3d at p. 413) or to "promote reliable determinations of guilt or innocence." (Guerra, supra,37 Cal.3d at p. 402.) The Teague analysis uses somewhat different language — it considers whether the rule "alters the range of conduct or the class of persons that the law punishes" (Schriro, supra,542 U.S. at p. 353) or whether the new rule is "necessary to prevent . . . an inaccurate conviction." (Whorton, supra, 549 U.S. at p. ___ [127 S.Ct. at p. 1182].) Although the Johnson test is phrased differently than the Teague analysis, the focus of each analytical tool is the same: to determine whether the new rule prevents an innocent defendant from being convicted of a crime he or she did not commit. And under bothJohnson and Teague, Cunningham affects the manner in which a defendant's sentence is determined — it does not shield a defendant from a wrongful conviction. (Amons, supra, 125 Cal.App.4th at p. 866.) As such, California law under the Johnson formulation does not provide broader relief than allowed under Teague. Cunningham does not — under eitherTeague or Johnson — apply retroactively to defendant's conviction, which was final well before Cunningham was decided. *Page 1407 
 DISPOSITION The court's judgment is reversed. The court is directed to enter a new judgment denying defendant's petition for writ of habeas corpus and reinstating defendant's original sentence.
 O'Leary, Acting P. J., and Moore, J., concurred.
[1] "State convictions are final `for purposes of [the] retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.'" (Beard v. Banks (2004) 542 U.S. 406, 411 [159 L.Ed.2d 494,124 S.Ct. 2504] (Beard).) On August 31, 2005, the California Supreme Court denied defendant's petition for review. Defendant's time to file a petition for writ of certiorari expired on November 29, 2005. (U.S. Supreme Ct. Rules, rule 13.)
[2] This issue is currently before the California Supreme Court. (In reGomez, review granted Oct. 24, 2007, S155425.)
[3] Desist was superseded by Griffith v. Kentucky (1987) 479 U.S. 314
[93 L.Ed.2d 649, 107 S.Ct. 708].
[4] California courts also apply the Johnson test on direct review where the new rule is founded on state law. (See, e.g., People v. Alvas
(1990) 221 Cal.App.3d 1459, 1465-1466 [271 Cal.Rptr. 131] (Alvas);People v. Ruhl (1985) 168 Cal.App.3d 311, 317-318 [214 Cal.Rptr. 93] (Ruhl); People v. Cantu (1984) 161 Cal.App.3d 259, 267-269 [207 Cal.Rptr. 460] (Cantu).) In People v. Guerra (1984) 37 Cal.3d 385, 413
and footnote 24 [208 Cal.Rptr. 162, 690 P.2d 635] (Guerra), the California Supreme Court applied the Johnson test to determine whether the rule announced in People v. Shirley (1982) 31 Cal.3d 18, 66-67 [181 Cal.Rptr. 243, 723 P.2d 1354] (Shirley), applied to cases that were not yet final when Shirley was decided. On direct review, courts now refer to the test of retroactivity articulated in Johnson as "Guerra's
test of retroactivity." (People v. Hedgecock (1990) 51 Cal.3d 395, 410, fn. 4 [272 Cal.Rptr. 803, 795 P.2d 1260]; see also People v. Walsh
(1996) 49 Cal.App.4th 1096, 1103 [57 Cal.Rptr.2d 214]; People v.Lopez (1993) 21 Cal.App.4th 225, 229 [27 Cal.Rptr.2d 25].)
 On direct review, where the new rule is based on the federal Constitution, the Griffith test controls. "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a `clear break' with the past." (Griffith v. Kentucky, supra, 479 U.S. at p. 328.) Where the new rule is based on state law, however, the California Supreme Court has declared the Griffith retroactivity standard not binding on direct review. (Murtishaw, supra, 48 Cal.3d at pp. 1012-1013.)
[5] On direct review, courts have also concluded a new rule does not apply retroactively where the purpose of the rule is not integral to a fair determination of guilt or innocence. (See, e.g., Alvas, supra,221 Cal.App.3d at pp. 1465-1466 [rule that "ha[d] no bearing on the reliability of the fact-finding process, but instead assure[d] application of a procedural safeguard and aid[ed] appellate courts in determining whether the individual made an intelligent and knowing waiver of the right" to a jury trial did not apply retroactively]; Ruhl, supra,168 Cal.App.3d at pp. 317-318 [no retroactive application of rule regarding defendant's waiver of right to be sentenced by judge who takes plea bargain; rule was "collateral to a fair determination of guilt or innocence"]; Cantu, supra, 161 Cal.App.3d at pp. 267-270 [rule governing the evidence necessary to establish a violation of the fair cross-section rule did not apply retroactively; the rule was "not directed at vindicating a right which is essential to a reliable determination of whether an accused should suffer a penal sanction"];People v. Kaanehe (1977) 19 Cal.3d 1, 10 [136 Cal.Rptr. 409,559 P.2d 1028] [exclusionary rule did not apply retroactively; the purpose of the rule was to deter illegal police conduct, not to "ensure the reliability of the fact-finding process at trial"].) *Page 1408