# IN THE SUPREME COURT OF IOWA

No. 05–0559

Filed November 21, 2008

**STATE OF IOWA**,

Appellee,

vs.

**DAVID CHARLES SCHAER**,

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Jon Stuart Scoles, Judge.

Further review of court of appeals' decision finding no error in trial court's admission of hearsay statements made by victim of defendant's alleged assault over defendant's contention testimony violated his rights under the Confrontation Clause. **DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, Paul L. Martin, County Attorney, and Sandra L. Murphy, Assistant County Attorney, for appellee.

**TERNUS, Chief Justice.**

The appellant, David Schaer, appeals his conviction of domestic assault with intent to commit serious injury and of willful injury. On appeal, he claims the trial court's admission of hearsay testimony identifying him as the perpetrator of the assault violated his rights under the Confrontation Clauses of the United States and Iowa Constitutions. On a divided vote, the court of appeals affirmed his conviction, preserving one of his claims for a possible postconviction-relief action. Upon our review, we conclude all of the defendant's claims lack merit. Therefore, we vacate the court of appeals' decision and affirm the district court's judgment of conviction.

## I. Background Facts and Proceedings.

Evidence introduced at trial revealed the defendant and Teresa Bergan had been in a romantic relationship for about four years prior to the events at issue in this case. On June 3, 2004, Bergan spent the day with her stepsister, Sarah Reckner. Between 9 p.m. and 10 p.m. that evening, Reckner dropped off Bergan at the home Bergan shared with the defendant. Approximately fifteen minutes later, Reckner received a phone call from a hysterical Bergan, asking Reckner to pick her up. According to Reckner's trial testimony, Bergan told her "they had gotten into a fight" and that Bergan had left the house.

Reckner proceeded to pick up Bergan at a church located a few blocks from the residence where Bergan had been dropped off. Upon seeing that Bergan was bloody and badly beaten, Reckner took Bergan to the emergency room where she was treated. Eventually, a police officer arrived at the hospital and interviewed Bergan regarding the nature and source of her injuries. During Bergan's conversations with medical

personnel and the police officer, she identified the defendant as her assailant.

Schaer was arrested and charged with domestic abuse assault with intent to cause serious injury and with willful injury causing serious injury. *See* Iowa Code §§ 708.1, .2A(2)(*c*), .4(1) (2003). He pled not guilty, and the case proceeded to a jury trial.

By the time of trial, Bergan had recanted her original statements identifying the defendant as the perpetrator; she asserted an unnamed female had assaulted her. Due to this recantation, the State did not call Bergan to testify at trial. To prove Schaer inflicted Bergan's injuries, the State relied on the testimony of Reckner, the nurse and doctor who treated Bergan, and the police officer who interviewed Bergan at the hospital, Officer Blake. Reckner testified Bergan told her "*they* had gotten into a fight" and that she overheard Bergan tell the police officer "that her [Bergan] and David got into a fight and he beat her up." The nurse testified that Bergan told her she "had been beaten by [her] ex-boyfriend." The doctor testified similarly that Bergan told him "she had been punched and bitten several times by her significant other," and she named that person as "David Schaer." Finally, Officer Blake testified that, after interviewing Bergan, he went to the residence Bergan "shared . . . with the David Schaer who she identified as her assailant." The jury returned a verdict of guilty to the charges of domestic assault with intent to commit serious injury and willful injury.

On appeal, the defendant claimed the testimony from Reckner, the medical personnel, and the police officer regarding the statements made by Bergan after she was assaulted were impermissibly admitted in violation of his Sixth Amendment right to confront the witnesses against him, as well as his comparable right under the Iowa Constitution. *See*

U.S. Const. amend. 6; Iowa Const. art. I, § 10.[1] To the extent his attorney failed to preserve error on this issue, Schaer asserted his counsel rendered ineffective assistance. The defendant also claimed his counsel was ineffective for failing to move for judgment of acquittal on the basis the State failed to prove the victim and the defendant lived together, an element of domestic abuse assault. Finally, he contended the district court abused its discretion by improperly considering, for sentencing purposes, Schaer's not-guilty plea as evidence of his lack of remorse.

The defendant's appeal was transferred to the court of appeals, where a divided panel determined, with one exception, that his claims were without merit. With respect to the defendant's challenge to Officer Blake's testimony, the court concluded error had not been preserved. Although Schaer asserted counsel was ineffective in this regard, the court of appeals found the record insufficient to permit it to address the ineffective-assistance-of-counsel claim, preserving it for a possible postconviction action. The court of appeals affirmed Schaer's conviction and sentence.

This court granted the defendant's application for further review to consider his claims based upon the Confrontation Clause.[2] After

---

[1]Because the defendant has offered no basis upon which to hold the state provision is different in scope and meaning from the federal provision, we will review the defendant's federal and state claims using the same principles. *See State v. Shipley*, ___ N.W.2d ___, ___ (Iowa 2008). For simplicity, we will refer only to the Federal Confrontation Clause in the remainder of our opinion, but our discussion applies equally to the state guarantee of the defendant's right to confront the witnesses against him.

[2]We have also examined the other issues raised by the defendant on appeal, but conclude they have no merit. For the reasons stated in the court of appeals' decision, we reject the defendant's claim his counsel was ineffective for failing to move for judgment of acquittal on the basis the State failed to prove the defendant and the victim lived together, as well as his claim the district court abused its discretion by relying upon an improper factor in sentencing him.

considering the parties' arguments and relevant legal authorities, we conclude the admission of hearsay testimony by Reckner and the medical personnel as to Bergan's statements to them did not violate the defendant's right to confront the witnesses against him.[3]  We find trial counsel failed to preserve error on the admission of testimony by Reckner and Officer Blake as to what Bergan told the officer.  Considering this claim under an ineffective-assistance-of-counsel analysis, we conclude that, even if the admission of this evidence violated Schaer's confrontation rights, reversal is not required because the defendant suffered no prejudice from this testimony:  it was cumulative to the properly admitted testimony of Reckner and the medical personnel.

## II.  Standard of Review.

We review the defendant's claims based on the Confrontation Clause de novo.  *State v. Musser*, 721 N.W.2d 734, 741 (Iowa 2006).

## III.  Error Preservation.

Prior to trial, the defendant's counsel filed a motion in limine to exclude evidence of the statements made by the victim that the State proposed to admit through the testimony of the victim's stepsister, her treatment providers, and Officer Blake.  Counsel claimed the victim's statements were testimonial in nature and therefore their admission was prohibited by the Confrontation Clause under the United States Supreme

---

[3]The State argued in its brief and the court of appeals addressed in its opinion whether the witnesses' hearsay testimony concerning what Bergan said was admissible under Iowa Rule of Evidence 5.803 as excited utterances or as statements for purposes of medical diagnosis or treatment.  *See* Iowa R. Evid. 5.803(2), (4).  Although the defendant in his brief refers to this evidence as "improper hearsay," he does not argue the admission of this testimony violated our rules of evidence.  The defendant's brief point and entire argument is focused on a violation of the Confrontation Clause.  Therefore, we do not consider whether the trial court erred in ruling the challenged testimony fell within an exception to the rule prohibiting the admission of hearsay.

Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The trial court ruled the victim's statements made to Reckner and to the medical providers were not testimonial in nature, and therefore, the Confrontation Clause did not apply to them. The court specifically ruled that "the motion in limine with respect to the stepsister and the two medical providers will be overruled and denied."

As for the statement made to the police officer, the court acknowledged it was "probably a little closer question." The court concluded it would "have to hear what the circumstances were surrounding the statements made by the alleged victim to the officer." The court decided it would wait to hear that evidence and "then make a ruling as to whether . . . it's a so-called testimonial statement."

As the State proposed prior to trial, it presented the hearsay testimony of Reckner, the medical personnel, and Officer Blake in its case in chief. Defense counsel did not object on confrontation grounds to the testimony now challenged on appeal. Therefore, we must decide whether Schaer waived error in the admission of this testimony by failing to object to it at trial.

We have previously considered whether a ruling on a motion in limine preserves error in the admission of evidence:

> "Ordinarily, error claimed in a court's ruling on a motion in limine is waived unless a timely objection is made when the evidence is offered at trial. However, 'where a motion in limine is resolved in such a way it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial. In such a situation, the decision on the motion has the effect of a ruling.'"

*State v. Daly*, 623 N.W.2d 799, 800 (Iowa 2001) (quoting *State v. Tangie*, 616 N.W.2d 564, 568–69 (Iowa 2000)).

Under the record made on the motion in limine, we are confident the trial judge conclusively resolved the defendant's objections to the hearsay testimony regarding the victim's statements to Reckner and the medical personnel prior to trial. The judge made it clear that evidence would be admitted notwithstanding the defendant's assertion it would violate his constitutional right to confront the witnesses against him. Therefore, any error in the admission of Reckner's testimony and that of the medical providers that Bergan told them Schaer was her assailant was preserved.

We do not reach the same conclusion with respect to the testimony of Reckner and Officer Blake as to the statement Bergan made to the officer. The trial court did not rule on the admissibility of this testimony at the hearing on the motion in limine. Rather, the court delayed ruling until it heard the context of the challenged statement at the time of trial. When Reckner testified to this statement at trial, defense counsel objected on hearsay grounds, but did not renew a confrontation objection. Officer Blake later responded to questions from the prosecutor in the following exchange:

> Q. After you took the photographs and finished your conversation with Ms. Bergan, what did you do, Officer? A. . . . I asked final questions. She had already identified her assailant, and I asked questions where I could find this person.
>
> Q. And so where did you go? A. I went to her address. . . .
>
> Q. Do you recall whose home was that? A. That was her shared residence along with the David Schaer who she identified as her assailant.

Defense counsel did not object to the final question, or to the officer's answer, so Bergan's hearsay statement to the officer that Schaer assaulted her was admitted without objection.

Under these circumstances, we conclude error was not preserved with respect to the witnesses' testimony regarding the victim's statement to the officer. Consequently, we will consider the defendant's challenge to this evidence as an ineffective-assistance-of-counsel claim.

### IV. Guiding Principles for Confrontation-Clause Analysis.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has held that only "testimonial statements" of the sort that "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause" are subject to the constraints of this constitutional provision. *Davis v. Washington*, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224, 237 (2006). If a hearsay statement made by a declarant who does not appear at trial is testimonial, evidence of that statement is not admissible under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 53–54, 124 S. Ct. at 1365, 158 L. Ed. 2d at 194; *accord State v. Bentley*, 739 N.W.2d 296, 298 (Iowa 2007). Thus, as we have recently noted, "the fighting Confrontation Clause issue with respect to admission of hearsay is whether the underlying statements should be considered 'testimonial' or 'nontestimonial.' " *State v. Shipley*, ___ N.W.2d ___, ___ (Iowa 2008). The State bears the burden of proving by a preponderance of the evidence that a challenged hearsay statement is nontestimonial. *Bentley*, 739 N.W.2d at 298.

Although the Supreme Court has stated the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony,' " *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364, 158

L. Ed. 2d at 192, it has not provided a comprehensive definition of what constitutes "testimony" or of what statements are "testimonial." Nonetheless, in *Shipley*, we gleaned the following guidance from the Court's *Crawford* decision:

> [T]he Court indicated that, at a minimum, there were four types of evidence that met the definition of testimonial: grand jury testimony, preliminary hearing testimony, former trial testimony, and statements resulting from police interrogation. These are the types of evidence with the "closest kinship" to historical "abuses at which the Confrontation Clause was directed."
>
> In addition to these four categories of evidence, the Supreme Court provided three "formulations" to aid courts in determining whether other types of statements are testimonial. The first formulation involved *ex parte* in-court testimony or its functional equivalent where the declarant would reasonably expect the statements to be used at trial and where the defendant was unable to cross-examine the declarant. The second formulation involved formalized testimonial materials such as confessions and depositions. The third and most open-ended formulation included statements made under circumstances that would lead witnesses to objectively believe the statements might be used at trial.

*Shipley*, ___ N.W.2d at ___ (quoting *Crawford*, 541 U.S. at 51–52, 68, 124 S. Ct. at 1364, 1374, 158 L. Ed. 2d at 193, 203).

**V. Statements Made to Stepsister and Medical Providers.**

Upon our review of the record, we conclude the State has met its burden to show the statements made by Bergan to her stepsister and to her medical providers were nontestimonial. Reckner testified that, when Bergan called her, Bergan was hysterical and crying. Bergan told her stepsister "they had gotten into a fight and that she left and [Reckner] needed to come pick her up." When Reckner picked up Bergan in the church parking lot a few minutes later, Bergan was still "hysterical, crying, . . . freaking out." Bergan was covered in blood, so Reckner took Bergan to the hospital.

The nurse who examined Bergan upon her arrival at the emergency room testified Bergan was upset, tearful, and anxious. In assessing Bergan's condition, the nurse noticed Bergan's face and eye were swollen, she had blood in her hair, and she appeared to be injured. The nurse asked Bergan what happened, and Bergan told her "she had been beaten by [her] ex-boyfriend."

Within a few minutes, the emergency room physician arrived. The doctor testified Bergan was extremely distressed and in quite a bit of pain from her injuries. (Bergan suffered a blowout orbital fracture of her eye, bruises, bite marks, and other injuries.) In taking a history from her, the physician asked Bergan how she sustained her injuries. Bergan replied that "she had been punched and bitten several times by her significant other," and identified that person as David Schaer.

Upon our de novo review, we find Bergan's statements to her stepsister and treatment providers were nontestimonial. *See People v. Cage*, 155 P.3d 205, 207–08 (Cal. 2007) (holding victim's identification of his assailant to treating physician who asked victim "what happened" was nontestimonial statement); *Compan v. People*, 121 P.3d 876, 880–81 (Colo. 2005) (holding victim's account of assault, including identity of perpetrator, to her friend was not testimonial statement). Her statements as to what happened were not solemn declarations made for the purpose of proving some fact. *See Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192 (stating " '[t]estimony' . . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact' " (quoting 2 Noah Webster, *An American Dictionary of the English Language* (1828))). They were made to obtain assistance and treatment for her injuries. Furthermore, Bergan's statements did not occur during a deposition, while under oath, or during a police

interrogation. Nor were her statements made under circumstances that would lead an objective person to reasonably believe the statements would be available for use at a later trial. As the California Supreme Court observed in concluding a victim's statement to his doctor under very similar conditions was nontestimonial, "the victim's statement lacked those attributes of testimony by a witness that are the concern of the confrontation clause." *Cage*, 155 P.3d at 208.

The circumstances surrounding Bergan's statements to her treatment providers are distinguishable from those present in *Bentley*, where we held statements identifying the perpetrator made by the victim to her counselor were testimonial. 739 N.W.2d at 299. In *Bentley*, the interview of the minor victim was conducted with the participation of representatives of the police department and the department of human services, and the questions posed to the victim were calculated to elicit factual details of the past criminal acts perpetrated against her. *Id.* "The participants in the interview . . . acknowledged . . . the interview served an investigative function for the State." *Id.* The victim was informed a police officer was listening to the interview, and it was important for the police to know everything that happened. *Id.* at 300. After the interview, a tape of the interview was provided to the police, marked as "evidence," and retained by the police department. *Id.* Under these circumstances, we concluded "the interview of [the minor victim] was essentially a substitute for police interrogation at the station house." *Id.* at 299.

The present case lacks the indicia of formality that characterized the interview in *Bentley*. Although hospital personnel informed the police of Bergan's assault, there is no indication in the record of any relationship between the emergency room personnel and law enforcement authorities that would support a finding the medical

providers' questioning of Bergan as to the cause of her injuries was "a substitute for police interrogation at the station house." *Id.*; *see also State v. Her*, 750 N.W.2d 258, 265 (Minn. 2008) (holding "statements made to non-government questioners who are not acting in concert with or as agents of the government are considered nontestimonial"); *State v. Sandoval*, 154 P.3d 271, 273–74 (Wash. Ct. App. 2007) (holding statements made by victim to treating physician identifying her attacker were nontestimonial where "made for diagnosis and treatment purposes," no indication "witness expected the statements to be used at trial," and "doctor [was] not employed by or working with the State").

Because Bergan's statements identifying her attacker to her stepsister and medical personnel were nontestimonial in character, hearsay testimony regarding these statements is not prohibited by the Confrontation Clause. The trial court did not err in admitting this testimony.

**VI. Statements Made to Police Officer.**

As discussed above, error was not preserved with respect to the witnesses' testimony regarding Bergan's identification of Schaer as her assailant to the police officer. Therefore, we will analyze the defendant's claim that this testimony violated the defendant's right to confront the witnesses against him under an ineffective-assistance-of-counsel framework.

The principles governing our consideration of ineffective-assistance-of-counsel claims are well established:

> To establish a claim of ineffective assistance of counsel, the defendant must show: (1) trial counsel failed to perform an essential duty; and (2) prejudice resulted from this failure. Counsel has no duty to raise an issue or make an objection that has no merit.

13

> " 'Generally, ineffective-assistance claims are preserved for postconviction relief proceedings to afford the defendant an evidentiary hearing and thereby permit the development of a more complete record.' " If the record on appeal shows, however, that the defendant cannot prevail on such a claim as a matter of law, we will " 'affirm the defendant's conviction without preserving the ineffective-assistance-of-counsel claims.' " Conversely, if the record on appeal establishes both elements of an ineffective-assistance claim and an evidentiary hearing would not alter this conclusion, we will reverse the defendant's conviction and remand for a new trial.

*Musser*, 721 N.W.2d at 752–53 (quoting *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003)).

We begin our discussion with the prejudice element of the defendant's ineffective-assistance claim, since "[i]f sufficient prejudice is not shown, we need not address whether counsel breached an essential duty." *State v. Wissing*, 528 N.W.2d 561, 564 (Iowa 1995). Prejudice is shown when it is "reasonably probable that the result of the proceeding would have been different." *State v. Henderson*, 537 N.W.2d 763, 765 (Iowa 1995). The probability of a different result must be " 'sufficient to undermine confidence in the outcome.' " *State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674, 698 (1984)). Even if the admission of Reckner's and Officer Blake's hearsay testimony violated the Confrontation Clause and counsel had a duty to object to its admission, we conclude there is no reasonable probability the outcome of the trial would have been different if the jury had not heard the objectionable evidence.

As we have previously discussed, there was admissible testimony from Reckner and the medical personnel that Bergan had identified Schaer as the perpetrator to them. Bergan's treating physician testified that Bergan had identified Schaer by name as her assailant. In addition,

the emergency room nurse and Reckner testified to Bergan's indirect, yet clear, identification to them of Schaer as the person who had assaulted her. Thus, Reckner's and Officer Blake's testimony as to Bergan's statement to the officer was cumulative of other properly admitted testimony. *See In re Moore,* 34 Cal. Rptr. 605, 613 (Cal. Ct. App. 2005) (holding counsel's failure to object to admission of 911 tape on confrontation grounds did not result in prejudice where evidence was cumulative of other testimony in record).

In addition, the prosecution's case was strong. The circumstances surrounding the event pointed exclusively to the defendant as the perpetrator, since Bergan had been dropped off at the home she shared with Schaer just fifteen minutes before Reckner picked up Bergan a few blocks from her home, bloodied and beaten. Moreover, there was no credible alternative explanation for Bergan's injuries. *See Haywood v. State*, 656 S.E.2d 541, 546 (Ga. Ct. App. 2008) (concluding in light of other evidence of guilt in the record, outcome of proceeding would likely not have been different had admission of DNA evidence been denied on confrontation grounds). We think any testimony regarding Bergan's identification of the defendant as her assailant to Officer Blake was merely cumulative, and its admission does not undermine our confidence in the outcome of the defendant's trial. Therefore, we conclude, as a matter of law, the defendant cannot establish the necessary prejudice to support an ineffective-assistance claim. Accordingly, we affirm his conviction without preserving this claim for a possible postconviction-relief action.

### VII. Conclusion and Disposition.

Statements made by the victim of the defendant's assault to the victim's stepsister and to her treatment providers were not testimonial,

and therefore, the admission of hearsay testimony regarding these statements did not violate the defendant's rights under the Confrontation Clause. Any error in the admission of testimony of similar statements made to the police officer was not preserved. Although we have considered the defendant's contention his counsel rendered ineffective assistance in failing to preserve this potential error, we are convinced this claim has no merit because the defendant was not prejudiced by counsel's allegedly deficient performance. The testimony of the police officer and stepsister with regard to the victim's statements to the officer was cumulative of other properly admitted evidence on the same issue and the case against the defendant was strong.

Finding no basis for reversal in the other challenges made by the defendant on appeal, we affirm the district court's judgment of conviction.

**DECISION OF COURT OF APPEALS VACATED. DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Baker, J., who takes no part.