**IN THE COURT OF APPEALS OF IOWA**

No. 14-1238
Filed November 25, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GINGER LEA JEFFERSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Tama County, Stephen B. Jackson,

Judge.


        The defendant appeals from her conviction and sentence for murder in the

first degree.  **AFFIRMED.**



        Mark C. Smith, State Appellate Defender, and Rachel C. Regenold,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.



        Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Ginger Jefferson appeals from her conviction and sentence for murder in the first degree. She maintains she received ineffective assistance from trial counsel. Specifically, she maintains trial counsel was ineffective for failing to object to the admission of the interrogation audio, which contained evidence of prior bad acts and Jefferson's[1] dislike of the victim's interference in conversations about Native American culture, in violation of the ruling on the motion in limine. Even if the State violated the agreement by admitting the unredacted audio of Jefferson's police interview and counsel should have objected, Jefferson cannot establish that she suffered prejudice. Thus, trial counsel did not provide ineffective assistance, and we affirm.

**I. Background Facts and Proceedings.**

Kerry, the victim in this case, was married to Dustin, the son of the defendant. Kerry and Dustin had a difficult and volatile marriage, and on September 25, 2013, they were living separately. Dustin was staying at the home of his cousin Carlos in Tama, Iowa.

At approximately 10 a.m., Jefferson and her daughter, Sahara, went to Carlos' home to visit Dustin. Kerry was also visiting Dustin at the time. Jefferson, Sahara, and Dustin discussed the "politics" of the defendant returning to a job at the Meskwaki Settlement. At some point during the conversation, Kerry joined in and expressed that Jefferson should "jump at the chance" to return. Jefferson was upset by Kerry's participation in the conversation.

---

[1] Although multiple people involved in the case share the last name of Jefferson, we refer to the defendant as Jefferson throughout and refer to others by their first names.

Kerry left for approximately an hour to visit her mother. During that time, Jefferson, Sahara, and Dustin drank alcohol at Carlos' home. When Kerry returned, she brought a bottle of whiskey and joined the others in drinking.

Sometime before 1 p.m., Jefferson, Dustin, and Sahara left in Dustin's car. During the drive, Sahara became upset and tried to jump out of the moving vehicle. Dustin stopped and allowed Sahara to get out, and she walked into a cornfield. Sahara refused to return to the car, so Dustin and Jefferson left her while they returned to Tama. A police officer later located Sahara wandering on the highway at 2:37 p.m. and transported her to the Grinnell Medical Center.

At approximately 1:30 p.m., Kerry made her first of several telephone calls to the Meskwaki Police Department. She was providing the police information on how to locate Dustin so they could arrest him on an outstanding warrant for sexual abuse. During the same time period, Kerry made several calls to Dustin.

At 2:22 p.m., Kerry inadvertently called the police department. The secretary who answered the call could hear Kerry arguing with two people. She heard Kerry yell they were both going to jail for what they did. The secretary was eventually able to get Kerry's attention, and Kerry apologized for accidentally calling and then hung up.

Kerry made one last call to the police department at 2:35 p.m. As a result of the call, officers were dispatched to Carlos' residence in order to arrest Dustin on the outstanding warrant.

Two officers arrived at Carlos' residence at 2:44 p.m. As they neared the residence, they noticed Dustin's vehicle was just pulling into the driveway, and they pulled in behind it. Sergeant Kimberly Schwartz approached Dustin's

vehicle and asked him to step outside of the vehicle. Instead of getting out, Dustin attempted to put his car keys back in the ignition as if to flee. Sergeant Schwartz drew her Taser and ordered Dustin to step out of the vehicle. Dustin got out of the vehicle and stated that he needed to check on his wife. Sergeant Schwartz noted that Dustin seemed distressed and drunk at the time. He then told her that he thought his wife was dead and that the officers needed to go check on her. Sergeant Schwartz observed what she believed to be blood on Dustin's clothing. The police then entered the residence and found Kerry dead in a pool of blood on the floor. She had sustained two stab wounds to the neck.

Meanwhile, Amber Navarro—the girlfriend of Jefferson's nephew—was outside of her residence approximately one block from Carlos' residence. She was waiting for the school bus to drop her children off when she heard Jefferson inside the house yelling, "Daniel, Amber, Daniel, Amber." Amber entered her home and found Jefferson crying in the dining room. Jefferson stated she "got into it with Kerry" and she believed Kerry was dead. Jefferson told Amber she stabbed Kerry in the neck twice and blood started squirting out. Amber saw that Jefferson had blood on her hands and was worried the children would see it when they arrived home from school. Amber told Jefferson to go to the kitchen and wash her hands. When she attempted to move to the kitchen, Jefferson fell. When Amber tried to help her stand, Jefferson touched Amber's shirt and left a blood stain. Amber called her boyfriend Daniel who advised her to call the police. Before she did so, Amber called Carlos to warn him not to let his children go home from school. She was worried about what his children would find if they entered the home. She also called Laurie Davenport—the defendant's daughter-

in-law—at the request of Jefferson. Davenport heard Jefferson say that she stabbed Kerry twice in the neck. Jefferson then asked for "help with a bus ticket" so she could leave town. Davenport refused. Amber then called the Tama Police Department and reported what Jefferson had told her. Officers were dispatched and ultimately took Jefferson into custody as a material witness. The same day, Amber delivered her t-shirt to the police station.

Jefferson was taken to the police station, and an audio recording was made of the interrogation. Jefferson told the officers that she had gone to Amber's directly after she and Dustin returned to Tama. She stated that when they returned to Carlos' home, she saw Amber standing in the front yard talking on her cell phone. Jefferson said Kerry had an "evil smile" on her face, so she decided to walk to Amber and Daniel's home. She stated she was just talking and smoking with Amber when police arrived. She denied that she had harmed or quarreled with Kerry, and she maintained she never reentered Carlos' residence after leaving with Dustin and Sahara. She could not answer police questions about how the blood had gotten on her clothing.

Jefferson was charged with murder in the first degree.

Prior to trial, Jefferson filed a motion in limine. In it, Jefferson requested the court order the State not to make any reference to "an alleged previous physical confrontation" between Jefferson and the victim as well as "Jefferson's alleged dislike of the alleged victim due to Ms. Kerry Jefferson being a White American." The State resisted the motion.

At the hearing on the motion, the State agreed it was "not seeking to introduce the specific bad act" of the physical encounter between Jefferson and

Kerry. The State also agreed there was an "allegation that perhaps the Defendant's motive for the murder was to prevent her daughter-in-law from getting her son's per cap should he go to prison on an unrelated charge" and the State "wasn't saying that." At the conclusion of the hearing, the court asked both attorneys, "Do you think we have an understanding about [the two issues]?" and both agreed they did.

A jury trial commenced on May 19, 2014.

Kristin Evans, a DNA analyst from the Iowa Division of Criminal Investigation (DCI), testified that Kerry's DNA was found on Jefferson's clothes as well as Dustin's clothes. She also testified that the blood on the knife found in Carlos' backyard matched Kerry's blood. Dustin had admitted to law enforcement that the knife was his, although he denied carrying it every day and stated the last time he saw the knife, it was sitting by the sink in Carlos' kitchen.

The jury found Jefferson guilty of murder in the first degree. She was sentenced to life in prison. Jefferson appeals.

**II. Standard of Review.**

A defendant may raise an ineffective-assistance claim on direct appeal if the defendant has reasonable grounds to believe the record is adequate for us to address the claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). If we determine the record is adequate, we may decide the claim. *Id.* We review claims of ineffective assistance of counsel de novo. *Id.* This is our standard because such claims have their basis in the Sixth Amendment to the United States Constitution. *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012).

**III. Discussion.**

The Sixth and Fourteenth Amendments of the United States Constitution and article I section 10 of the Iowa Constitution provide a defendant is entitled to the assistance of counsel.[2] A defendant is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must prove the following elements by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty and (2) prejudice resulted from counsel's failure. *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). Because Jefferson has raised multiple claims of ineffective assistance of counsel, we look at the cumulative effect of the prejudice arising from those claims. *State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012). Prejudice is established when it is reasonably probable the result of the proceeding would have been different. *State v. Schaer*, 757 N.W.2d 630, 637 (Iowa 2008). Put another way, the question is whether our confidence in the verdict is undermined by counsel's deficient performance. *King v. State*, 797 N.W.2d 565, 574 (Iowa 2011). Jefferson's claims fail if either element is lacking. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010). Here, there is an adequate record for us to decide Jefferson's claims on direct appeal.

Jefferson maintains trial counsel was ineffective for failing to object to the admission of evidence in violation of the ruling on the motion in limine. Specifically, she contends counsel had a duty to object to the admission of the audio recording from the interrogation because it contained evidence of prior bad

---

[2] We consider the federal and state constitutional provisions "as congruent" for purposes of appeal when the appellant provides no argument they should be applied differently. *State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012).

acts and Jefferson's dislike of Kerry interfering in conversations about Native American culture because the State had agreed not to seek to admit such evidence.

We may consider the prejudice prong first. *See Everett*, 789 N.W.2d at 159 ("[B]ecause we can resolve this issue on the prejudice prong, we need not determine whether the failure to [object] would . . . constitute a breach of an essential duty."). Two witnesses, Amber Navarro and Laurie Davenport, testified that Jefferson confessed to them. Both testified that Jefferson told them she stabbed Kerry twice in the neck. Amber testified that Jefferson had blood on her hands and she transferred some of that blood onto Amber's t-shirt when Amber tried to help her stand. Tests run by DCI confirmed the substance on Jefferson's clothes matched Kerry's blood and DNA. Although Jefferson did not testify at trial, when she was interrogated by police, she denied she had entered Carlos' home again after she left with Dustin and Sahara sometime before 1 p.m., but she had no explanation for how Kerry's blood came to be on her clothing.

Even if the State violated the parties' agreement by admitting the unredacted audio of Jefferson's interview with police and defense counsel should have objected, our confidence in the outcome is not undermined. Jefferson has not shown "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Jefferson's confession to two individuals and the victim's blood on her clothing constitute powerful evidence. Thus, Jefferson's claim of ineffective assistance fails.

**AFFIRMED.**