# IN THE COURT OF APPEALS OF IOWA

No. 17-0057
Filed April 18, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIMOTHY MICHAEL BASQUIN,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.


Timothy Basquin appeals his conviction for domestic abuse assault causing bodily injury. **JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR ENTRY OF A CORRECTED SENTENCE.**


Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee.


Considered by Vaitheswaran, P.J., Bower, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**VAITHESWARAN, Presiding Judge.**

A jury found Timothy Basquin guilty of domestic abuse assault causing bodily injury. This court reversed the judgment and remanded for a new trial. *See State v. Basquin*, No. 15-0037, 2016 WL 1679157, at *2-3 (Iowa Ct. App. Apr. 27, 2016). A jury again found Basquin guilty. On appeal, Basquin (1) challenges the sufficiency of the evidence supporting the jury's finding of guilt, (2) contends his trial attorney was ineffective in failing to object to the district court's inclusion of a jury instruction on general intent, (3) argues his trial attorney should have objected to what he contends was impermissible testimony vouching for the assaulted woman's credibility, (4) contends the district court erred in admitting hearsay testimony, (5) argues counsel was ineffective in failing to move for a new trial based on the weight of the evidence, and (6) argues the district court erred in imposing a domestic abuse assault surcharge.

## I. *Sufficiency of the Evidence*

Basquin challenges the sufficiency of the evidence supporting the jury's finding of guilt. "A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015).

The jury was instructed the State would have to prove the following elements of domestic abuse assault causing bodily injury:

> 1. On or about the 12th day of May, 2014, Timothy Basquin did an act which was intended to cause pain or injury to [a woman].
> 2. Timothy Basquin had the apparent ability to do the act.
> 3. Timothy Basquin's act caused a bodily injury to [the woman] as defined in Instruction No.19.

4. The act occurred between persons who were family or household members who resided together within the year prior to May 12th, 2014.

Basquin contests the third and fourth elements. He argues, "[T]he State failed to prove [he] assaulted" the woman and the State "failed to prove a domestic relationship." On retrial, a jury could have found the following facts.[1]

After the woman sustained injuries, she left for the sheriff's office. En route, she responded to a text from Basquin by stating, "I have done nothing to deserve being choked, knocked, and physically thrown out the door."

The woman gave the sheriff a voluntary written statement. She said Basquin grabbed her by her neck, squeezed with both hands, and shook her neck so tightly that she began choking and gasping for breath. Basquin threw her out the door, causing her to fall on the porch, and kicked her on her left side. A deputy sheriff took photographs to document the injuries.

The woman proceeded to a hospital, where she was seen by a nurse practitioner. She appeared with "red marks on her neck and red marks on her wrist and her thigh and the back of her shoulder." She described her injuries in the same manner as she described them in her voluntary statement to the sheriff.

At trial, the woman backtracked from these statements, testifying the injuries were either self-inflicted or occurred when she slipped on the porch. The

---

[1] In evaluating the sufficiency of the evidence, we consider all the evidence, including evidence Basquin contends was erroneously admitted. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

jury reasonably could have found the woman's original statements more persuasive.[2]

The jury also could have found Basquin and the woman were "family or household members," defined for the jury as "persons cohabiting with each other." The woman testified she and Basquin had a relationship for "about six months." She described their relationship as "[f]riends with benefits." She gave Basquin's address as her own, had a key to Basquin's house, and received mail there. Although she attempted to minimize her contacts with him, it was up to the jurors to determine whether the "continuity and length of" the relationship justified a finding of cohabitation.

Substantial evidence supports the third and fourth elements of the crime.

## II.    *Impermissible Vouching*

Basquin contends his trial attorney was ineffective in failing to object to the testimony of three witnesses as improper opinion evidence. To prevail he must establish the breach of an essential duty and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We find the record adequate to address the issue.

The nurse practitioner described the woman's injuries as consistent with the woman's narrative at the time:

> Q. Now, as you did indicate, these injuries were consistent with the narrative you were getting at that point in time? A. Correct.
> . . . .

---

[2] The Iowa Supreme Court recently addressed recantations in *Schmidt v. State*, ___ N.W.2d ___, ___, 2018 WL 1440111, at *9 (Iowa 2018). The court's holding that the defendant's guilty pleas "do not preclude his actual-innocence claim" does not affect the recantation in this case.

> Q. Now, you did say that injuries can be consistent with a lot of things? A. Correct.
> Q. And so what you've been shown as State's Exhibit G can arguably be consistent with someone falling down? A. Yes.
> Q. Can it also be totally consistent with someone claiming or telling you that they've been kicked? A. Yes.
> Q. Would that be totally consistent with that? A. Yes.

Basquin argues the nurse practitioner improperly opined the woman's "initial out-of-court statements [were] to be believed." *See State v. Dudley*, 856 N.W.2d 668, 676-77 (Iowa 2014) (prohibiting testimony vouching for the credibility of a witness, both directly and indirectly). He contends his trial attorney was ineffective in failing to object to this testimony. On our de novo review, we disagree.

According to the nurse practitioner, the woman told her "her neck was grabbed," she "was shaken by the neck, and she was not able to breathe until she was let go," she "was pushed through a door," and "[s]he was kicked in the left thigh." The nurse practitioner opined the injuries she sustained could be consistent with the narrative she gave at the time. But she also agreed the injuries could be consistent with a lot of things, including a fall on the porch, as the woman testified to at trial.

The nurse practitioner did not impermissibly vouch for the woman's credibility. *See State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014) (finding "nothing wrong" with sentences conveying that a child "was able to give [the evaluator] a clear and detailed history" and the child "gave the same history to her mom as she did to" the evaluator); *Dudley*, 856 N.W.2d at 678 (holding assertion that statements were consistent throughout the interview gave "the jury an insight into the victim's memory and knowledge" and did not cross the line into permissible vouching for the person's credibility); *State v. Moore*, No. 10-1902, 2012 WL

3195779, at *7-8 (Iowa Ct. App. Aug. 8, 2012) (finding expert testimony from a physician that it is common to find no injuries to sexual assault reporters because the adult sex organs are designed "to fit together" was not improper vouching testimony and assisted the jury in understanding the evidence). Accordingly, counsel did not breach an essential duty in failing to object to her testimony on this ground.

The same holds true for certain testimony elicited from a deputy sheriff. The deputy opined that the woman's injuries were consistent with an assault.[3] As noted, internal consistencies in a witness statement may be brought to the jury's attention. *See Dudley*, 856 N.W.2d at 678. But, assuming the testimony could be construed as impermissible vouching, it was cumulative of the woman's statement to the sheriff, her statements to the nurse practitioner, and the nurse practitioner's description of the woman's injuries and demeanor. *See State v. Schaer*, 757 N.W.2d 630, 638-39 (Iowa 2008) (rejecting ineffective-assistance claim based on failure to object to certain hearsay testimony on the ground the testimony was "cumulative of other properly admitted evidence").

Another deputy's testimony is more problematic. She agreed the woman's "demeanor or behavior" was "pretty much just consistent with what [she] knew at that point, that she had been assaulted." The State concedes Basquin's attorney could have lodged a *Dudley*-style objection to the testimony but argues the

---

[3] The deputy died between the first and second trials, and his original testimony was read into the record of the second trial. Before the reading to the jury, the parties discussed the challenged portion of the deputy's testimony and agreed the original question and answer were, "In your experience of investigating crimes of assaults, are those marks consistent with what she told you? Answer: Yes." The parties and the district court further agreed to change the language to state the marks were consistent with an "assault."

testimony was not prejudicial. We agree because the evidence was cumulative of other duly admitted evidence.

### III.    Admission of Hearsay Evidence

As noted, the nurse practitioner testified to what the woman told her. This testimony was hearsay. *See* Iowa R. Evid. 5.801(c) ("Hearsay" is a statement "[t]he declarant does not make while testifying at the current trial or hearing" offered "into evidence to prove the truth of the matter asserted in the statement."). Basquin contends the evidence was inadmissible. *See* Iowa R. Evid. 5.802. The State responds that the evidence fell into an exception for medical diagnosis and treatment. *See* Iowa R. Evid. 5.803(4). We agree.

The district court did not allow the nurse practitioner to identify the perpetrator. *See State v. Smith*, 876 N.W.2d 180, 190 (Iowa 2016) (concluding "the State presented insufficient evidence that the identity of the assailant was reasonably pertinent to [the victim's] diagnosis or treatment"). The court limited her testimony to "the nature of the injuries as they were presented" and "the medical test, diagnosis, etcetera, that were made with regard to those external injuries." With this limitation, the nurse practitioner's testimony fell into the medical diagnosis and treatment exception. We conclude the district court did not err in admitting the nurse practitioner's testimony.

### IV.    Ineffective Assistance – Jury Instructions

The jury received two instructions on the meaning of intent. The first was a general intent instruction:

> To commit a crime a person must intend to do an act which is against the law. While it is not necessary that a person knows the act is against the law, it is necessary that the person was aware he

was doing the act and he did it voluntarily, not by mistake or accident. You may, but are not required to, conclude a person intends the natural results of his acts.

The second was a specific intent instruction:

Specific intent means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.

Because determining Timothy Basquin's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine his specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

Basquin contends his trial attorney was ineffective in failing to object to the submission of both instructions. In his view, "[T]he instructions as a whole provided no guidance to the jury as to how the specific intent instruction or the general intent instruction applied to the elements in the marshalling instructions" and the instructions "allowed the jury to reach guilty verdicts on the specific intent elements of assault based upon a finding of general intent."

Basquin's argument is appealing at first blush. But the court of appeals recently rejected an identical argument. In *State v. Benson*, No. 17-0650, 2018 WL 739324, at *3-4 (Iowa Ct. App. Feb. 7, 2018), the jurors received the same general intent instruction given in Basquin's case and also received a specific intent instruction. The defendant argued the instructions were contradictory and would have confused or misled the jury. *Benson*, 2018 WL 739324, at *4. We stated, "The marshalling instruction for assault causing bodily injury" identified the type of intent the State would have to prove, namely that the defendant did an act "intended to cause pain or injury." *Id.* We concluded, "It is hard to imagine the jury

was confused or misled in believing the general intent instruction applied where the marshalling instruction clearly stated the specified purpose in mind." *Id.*

This case is even stronger than *Benson*. As noted, the marshalling instruction set forth the intent element of the crime as follows: "On or about the 12th day of May, 2014, Timothy Basquin did an act *which was intended to cause pain or injury to [the woman]*." (emphasis added). In addition, the separate specific intent instruction referred to Basquin by name and cited "his specific intent."

We acknowledge this court found counsel ineffective in failing to object to a general intent instruction under similar circumstances. *See State v. Drake*, No. 12-0554, 2013 WL 3457176, at *4-6 (Iowa Ct. App. July 10, 2013). In our view, *Drake* is distinguishable. The court stated, "[T]he instructions as a whole provided no guidance to the jury as to how the specific intent instruction *or* the general intent instruction applied to the elements in the marshaling instructions." *Id.* at *6. In addition, jury questions revealed confusion about the intent requirement. *Id.* at *4, *6. Although Basquin's marshalling instruction contained the same language as the marshalling instruction in *Drake*—an act which was meant to cause pain or injury—the Basquin jury also was informed in the separate specific intent instruction that the State would have to prove Basquin's "specific intent." *See State v. Wessels*, No. 15-1023, 2016 WL 4543719, at *2 (Iowa Ct. App. Aug. 31, 2016) (concluding "the marshalling instruction for assault on a peace officer required the State to prove specific intent. Given the precise language of the marshalling instruction, there was scant likelihood the jury would import the general intent instruction in deciding whether the State proved the elements of assault on a peace officer"). This additional language mitigated concerns about jury confusion. We

conclude counsel did not breach an essential duty in failing to challenge the district court's inclusion of a general intent instruction. *See Strickland*, 466 U.S. at 687.

## V.     *Ineffective Assistance – New Trial Motion*

Basquin argues counsel was ineffective in failing to file a new trial motion on the ground the verdict was against the weight of the evidence. *See State v. Shorter*, 893 N.W.2d 65, 70 (Iowa 2017). The weight-of-the-evidence standard "involves questions of credibility, and requires the district court to determine whether more credible evidence supports one side or the other." *Id.* Although district courts are vested with "wide discretion in deciding motions for new trial," they are to exercise their discretion "carefully and sparingly" under the weight-of-the evidence standard. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1988). A motion should be granted under this standard, "only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

Although the woman recanted her pretrial statements about the assault and Basquin denied committing an assault, a district court could have found her virtually contemporaneous statements to the sheriff and nurse practitioner to be more credible than her subsequent recantation. In the exercise of its broad discretion, and heeding the Iowa Supreme Court's caution to grant a new trial carefully and sparingly, the court would not have abused its discretion in denying a new trial motion. Accordingly, counsel did not breach an essential duty in failing to file a new trial motion on this ground.

## VI.     *Domestic Abuse Assault Surcharge*

The district court imposed a $100 domestic abuse assault surcharge. Basquin contends the surcharge was illegal because the statutory provision authorizing the surcharge—Iowa Code section 911.2B (2015)—became effective after the date of his offense. The State agrees. *See State v. Lopez*, 907 N.W.2d 112, 123 (Iowa 2018) ("[T]he imposition of the section 911.2B surcharge for conduct occurring prior to the July 1, 2015 effective date violates the Ex Post Facto Clauses of the Iowa and United States Constitutions."). We "vacate only that discrete portion of [Basquin's] sentence imposing the section 911.2B surcharge and remand to the district court for entry of a corrected sentence." *Id.*

**JUDGMENT AFFIRMED, SENTENCE AFFIRMED IN PART AND VACATED IN PART, AND REMANDED FOR ENTRY OF A CORRECTED SENTENCE.**