# IN THE COURT OF APPEALS OF IOWA

No. 21-0145
Filed May 11, 2022

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**RAUL CASILLAS MARTINEZ,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Crawford County, John D. Ackerman, Judge.

     A defendant appeals his criminal convictions on several drug charges.
**REVERSED AND REMANDED.**

     Priscilla E. Forsyth, Sioux City, for appellant.

     Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

     Heard by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

At Raul Martinez's jury trial on drug-dealing charges, the State offered into evidence an investigative report written by law enforcement and a search warrant application. Both contained hearsay statements from a confidential informant who did not testify at trial. Over Martinez's hearsay and Confrontation Clause objections, the district court admitted the exhibits into evidence. The jury found Martinez guilty on all charges submitted to it for consideration. Martinez appeals, challenging the admission of the investigative report and search warrant application into evidence.

**I.      Background Facts and Proceedings**

In May 2018, Lieutenant Todd Perdew of the Crawford County Sheriff's Office was contacted by a confidential informant who said that he could buy methamphetamine from Martinez. Law enforcement organized two controlled buys. Before each buy, the informant was searched and provided with a recording device and serialized money to purchase methamphetamine. Officers followed the informant to the buys, the second of which was at Martinez's home, but they did not witness the transactions. The informant came back with methamphetamine after both buys, but no serialized money, and told the officers what occurred. After the second buy, Lieutenant Perdew applied for a warrant to search Martinez's residence, which was granted.

The officers executed the warrant in the early morning hours of May 18. Upon the initial knock-and-announce, officers did not get a response. When officers heard movement inside, they tried to force the front door open but were unable to because it was reinforced with steel, a feature Lieutenant Perdew

testified is common to drug houses. Once someone finally opened the door, the officers found three occupants in the residence—Martinez, Shaina Bautista, and Juvencio Ibarra. Ibarra was the one who opened the door, Bautista was located on the toilet in the bathroom, and Martinez was in a hallway.

After being detained, Martinez directed one of the officers to the location of an unloaded handgun. In the bathroom where Bautista was located, officers found a methamphetamine pipe containing residue in the toilet. Other drug paraphernalia was scattered throughout the house. "[I]n between some clothes in the closet area" in a bedroom, Lieutenant Perdew found a bag housing two other bags, both containing methamphetamine. The bags containing the methamphetamine were wet. Each bag contained amounts that "were more than user weights."[1] Roughly $1600 was found in Martinez's wallet and $400 in his front pocket. Officers involved with the controlled buys testified that some of the money found on Martinez included serialized money from the second controlled buy.[2] Several other items were found that officers testified are common to drug-dealing operations: a surveillance system, a computer, SIM cards, and a digital scale.

Following the raid on Martinez's home, Lieutenant Perdew prepared a report detailing the controlled buys and results of the search. The report stated that for the first buy, the informant gave "Martinez the serialized money and was given methamphetamine," even though Lieutenant Perdew acknowledged at trial that law enforcement did not witness either buy. The search warrant application

---

[1] A report from the state crime lab disclosed the two bags contained 6.79 grams and 3.57 grams.

[2] No other evidence was presented that the money found on Martinez matched the serialized bills.

similarly stated that both "purchases of methamphetamine were made from . . . Martinez."

Martinez was charged with various drug-related offenses. At his jury trial, the State offered the investigative report written by Lieutenant Perdew as an exhibit. The defense objected on hearsay and confrontation grounds, broadening its argument beyond the report to also include the search warrant application the State had listed as an exhibit. The State responded that both were records of regularly conducted activity. The defense specified that because officers did not witness the drug transactions, the report and search warrant application were based on the confidential informant's statements about the transaction and were therefore hearsay. Because the informant was not testifying at trial, the defense argued "there was a lack a confrontation . . . as the defendant is unable to confront the confidential informant." The court overruled the objections, finding "[t]hese are business records. Your objection is denied."[3]

Ultimately, the jury found Martinez guilty of specified unlawful activity, two counts of possession of methamphetamine with intent, and failure to affix a drug-tax stamp.[4] In a subsequent motion to set aside the verdict, Martinez argued he

---

[3] Martinez also raised hearsay and Confrontation Clause objections to Lieutenant Perdew's testimony about what the confidential informant told him after the controlled buys. Although the court initially overruled those objections, it later reversed course and gave the jury the following limiting instruction: "You shall disregard any statement made by Lieutenant Perdew that the confidential informant told him that the defendant sold methamphetamine to the confidential informant." But the investigative report and search warrant application containing the same information remained part of the evidence considered by the jury.

[4] Before submitting the case to the jury, the court granted Martinez's motion for judgment of acquittal on count four, relating to possession with intent to deliver during the first controlled buy. The jury found him guilty of the same charge on counts two and three, respectively relating to his possession of methamphetamine

"was not given the opportunity to confront his accuser, the confidential informant, at the time of trial and such failure to confront violated" his state and federal constitutional rights to confrontation. The State responded the defense had a chance to subpoena and depose the informant and chose to not do so. The court denied the motion, and Martinez appealed following the imposition of sentence. On appeal, he again challenges the admission of the investigative report and search warrant application on hearsay and Confrontation Clause grounds.

## II.     Standard of Review

We review challenges to the admission of evidence as hearsay for correction of errors at law, while constitutional claims are reviewed de novo. *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021).

## III.     Discussion

Martinez first claims the district court abused its discretion in finding the investigative report and search warrant application were admissible under Iowa Rule of Evidence 5.803(6), the "so-called 'business records' exception to the hearsay exclusion rule." *See* Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.803:6 (Nov. 2021 update). He argues the exhibits should not have been admitted as business records under rule 5.803(6) because they do not fall within the "public records" exception in rule 5.803(8)(B), which expressly excludes from

---

when the police executed the search warrant and the second controlled buy. The tax-stamp violation also related to the drugs found during execution of the search warrant.

that exception certain investigative reports, namely those made by law enforcement.[5]

The State's response focuses on error-preservation concerns, likely because the State conceded in its appellate brief that Martinez's "public-record-exception argument is compelling." Going further at oral arguments, the State agreed it was "pretty clear" these exhibits should have been excluded under rule 5.803(8). Yet the State argues we should not reach this issue because Martinez did not make the same arguments to the district court that he does on appeal, specifically that rule 5.803(8)(B) applied to exclude the exhibits from admission under rule 5.803(6). Instead, the State points out, at trial he only argued the

---

[5] The interplay suggested by Martinez between rules 5.803(6) and (8) does not appear to have been addressed by our appellate courts. Martinez cites two Iowa cases in his appellate brief, *State v. Reitenbaugh*, 392 N.W.2d 486 (Iowa 1986) and *State v. McCurry*, 544 N.W.2d 444 (Iowa 1996). But neither involved the interplay between rules 5.803(6) and (8). Each only reviewed district court decisions that hearsay statements were admissible under rule 5.803(8), without alternative admissibility under rule 5.803(6) being an issue. As to the Iowa rules, one scholar has noted:

> The breadth of Rule 5.803(6) should also be compared with Iowa Rule 5.803(8) which creates a hearsay exception for public records. Certain public records are specifically not admissible under Iowa Rule 5.803(8)(B) that might have been admissible under Rule 5.803(6).

Doré, § 5.803:6. Considering the parallel federal rules, another scholar has explained:

> The breadth of Rule 803(6) overlaps the hearsay exception for public records contained in Rule 803(8). Where a conflict exists, a public record not meeting the requirements of the more specific rule . . . should *not* ordinarily be admitted under 803(6), although such public record may be admissible under another hearsay exception . . . . Any other construction would frustrate the intent of Congress with respect to limitations on admissibility imposed in Rules 803(8)(A)(ii) and (iii).

Michael H. Graham, Winning Evidence Arguments § 803:6 Rule 803(6): Records of Regularly Conducted Activity; Business Records (Dec. 2021 Update) (footnotes omitted).

investigative report and search warrant application were not business records. We choose to avoid these thorny error-preservation problems because the State conceded at oral argument that Martinez's constitutional rights to confrontation were violated. But like the hearsay issue, the State seeks to save Martinez's convictions on error-preservation and harmless-error grounds.

Turning to the error-preservation grounds, the State asserts the court did not rule on a confrontation objection to the investigative report, and Martinez did not object to the warrant application on confrontation grounds. We cannot agree with these hypertechnical error-preservation arguments. *See Segura v. State*, 889 N.W.2d 215, 219 (Iowa 2017) ("[E]rror does not turn on 'hypertechnical' challenges."). While the court did not specifically mention the Confrontation Clause in overruling Martinez's objections to the report, just before the court's ruling, Martinez and the State had an extended discussion about that very issue. The court's ruling denying Martinez's objections and admitting the report shows the court necessarily considered and rejected his arguments about lack of confrontation. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved."); *accord State v. Williams*, No. 16-1815, 2017 WL 6033874, at *1, n.3 (Iowa Ct. App. Dec. 6, 2017).

And though defense counsel did not use any terms of art unique to confrontation when he objected to the admission of the warrant application, counsel continued to argue that the person who witnessed the transactions—the informant—was not testifying. At the end of the exchange, the court overruled the

objections to the exhibit, noting the defense could have gained access to the informant but did not do so. *Cf. State v. Tompkins*, 859 N.W.2d 631, 640 (Iowa 2015) ("[T]he Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses to court." (citation omitted)). Error was preserved as to the admission of this exhibit as well.

As noted, the State does not contest that admission of the exhibits containing the informant's hearsay reports violated Martinez's state and federal rights to confrontation. Indeed, "[t]he Sixth Amendment to the United States Constitution guarantees that, 'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *State v. Schaer*, 757 N.W.2d 630, 635 (Iowa 2008) (ellipsis in original) (quoting U.S. Const. amend. IV); *see also* Iowa Const. art. 1, § 10. "[O]nly 'testimonial statements' of the sort that 'cause the declarant to be a "witness" within the meaning of the Confrontation Clause' are subject to the constraints of the constitutional provision." *Schaer*, 757 N.W.2d at 635 (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). "If a hearsay statement made by a declarant who does not appear at trial is testimonial, evidence of that statement is not admissible under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination." *Id.*

The informant's statements to law enforcement about who he bought the methamphetamine from were certainly testimonial, and the State does not argue otherwise. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004) ("'Testimony' . . . is typically '[a] solemn declaration or affirmation made for the purpose of

establishing or proving some fact.' An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." (internal citation omitted)). And the record shows the informant was available to testify at trial.

So we turn to the State's claim that the constitutional error was harmless. The Supreme Court has stated:

> [T]he admission of [hearsay] in violation of the Confrontation Clause does not mandate reversal. Reversal is not required if the State establishes that the error was harmless beyond a reasonable doubt. To determine harmlessness, the inquiry is not whether, in a trial that occurred without the error, a guilty verdict surely would have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.

*State v. Wells*, 738 N.W.2d 214, 218 (Iowa 2007) (alterations in original) (internal citations and quotation marks omitted).

We engage in a two-step analysis in determining whether the State met its burden to prove the error was harmless beyond a reasonable doubt. *See State v. Kennedy*, 846 N.W.2d 517, 527 (Iowa 2014). "The first step of the analysis requires us to ask what evidence the fact finder actually considered to reach its verdict." *Id.* "In the second step of the analysis, we weigh the probative force of that evidence against the probative force of the erroneously admitted evidence standing alone." *Id.* at 528. "We are required to ask whether the force of the evidence 'is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same' without the erroneously admitted evidence." *Id.* (citation omitted). "It is only when the effect of the incorrectly admitted evidence is comparatively minimal to this degree that it

can be said . . . there is no reasonable possibility that such evidence might have contributed to the conviction." *Id.* (alteration in original) (citation omitted).

Martinez was charged with the following criminal counts: (1) specified unlawful activity, (2) possession of methamphetamine with intent to deliver (drugs found during execution of the search warrant), (3) possession of methamphetamine with intent to deliver (second controlled buy), (4) possession of methamphetamine with intent to deliver (first controlled buy), and (5) failure to affix a drug-tax stamp (drugs found during execution of the search warrant). The court granted Martinez's motion for judgment of acquittal on count four, relating to the first controlled buy, and the jury found him guilty as charged on all remaining counts.

In its appellate brief, the State claimed any error "was harmless for certain convictions." Given the strength of the evidence, the State only argued error was harmless as to counts two and five, concerning the drugs found during the execution of the search warrant. When questioned at oral argument, the State agreed error was *not* harmless as to count three, relating to the second controlled buy. As to count one, specified unlawful activity, the State submitted in its brief that the jury instruction on that count authorized the jury to reach a guilty verdict upon the sole act of Martinez possessing methamphetamine in his home in relation to counts two and five.

We begin with counts two and five. On count two, the instructions informed the jury the State must prove Martinez possessed methamphetamine with intent to deliver. As to count five, the State was required to prove Martinez possessed a certain amount of a taxable substance, including methamphetamine, and failed to

permanently affix a tax-stamp to it. We first "ask what evidence the fact finder actually considered to reach its verdict." *See id.* at 527.

True, the search warrant was executed at Martinez's residence. The home donned several characteristics common to a drug operation, and some of the serialized money law enforcement sent to be used in the second controlled buy was reportedly found on Martinez's person. And methamphetamine was found hidden in what the jury could conclude were Martinez's belongings in his bedroom closet. Upon this evidence, the jury could have fingered Martinez as the culprit. But it also had a reasonable basis not to. There were three people in the home when the warrant was executed. And while there was evidence the drugs were among Martinez's belongings, that evidence was speculative and slim. In addition, the methamphetamine was found in a wet bag, and the evidence shows Bautista was in the bathroom potentially trying to flush evidence down the toilet, with law enforcement finding drug paraphernalia with residue in it. Martinez's hands were not wet when law enforcement entered the home.

It is not our role to read the minds of the jurors. *State v. Montgomery*, 966 N.W.2d 641, 661 (Iowa 2021). But if the jury was on the fence, evidence about who the informant reported he bought the drugs from would have turned the tides, particularly considering the district court instructed the jury to disregard the same evidence elicited during Lieutenant Perdew's testimony. Without the erroneously admitted evidence, the probative force of the remaining evidence standing alone is not so strong to convince us, beyond a reasonable doubt, that the verdict on these counts was unattributable to the error. *See Kennedy*, 846 N.W.2d at 528;

*Wells*, 738 N.W.2d at 218. So we cannot agree with the State that error was harmless, and we determine Martinez is entitled to a new trial on these counts.

That leaves us with count one, specified unlawful activity. For this count, the jury was instructed the State must prove, on or about May 18, 2018, the day the warrant was executed, Martinez committed an act punishable as an indictable offense for financial gain on a continuing basis. *See* Iowa Code §§ 706A.1(5), .2. The instructions only required Martinez to engage in a single "act" and did not define "continuing basis." So, as instructed, the single act of possessing methamphetamine with intent to deliver for a continuing period was sufficient for the jury to find Martinez guilty.[6] For the same reasons detailed above, we cannot conclude the verdict entered on this count was unattributable to evidence erroneously admitted in violation of Martinez's right to confrontation. Thus, error was not harmless, and Martinez is entitled to a new trial on this count. Lastly, we accept and agree with the State's concession that error was not harmless as to count three either.

---

[6] Jury instructions aside, the supreme court has stated the term "continuing basis" involves the showing of a pattern of activity, which "can be shown if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *State v. Reed*, 618 N.W.2d 327, 334 (Iowa 2000) (quoting *Midwest Heritage Bank v. Northway*, 576 N.W.2d 588, 591 (Iowa 1998)).

## IV.    Conclusion

Finding the violation of Martinez's right to confrontation was not harmless, we reverse his convictions on counts one, two, three, and five, and we remand for a new trial on those counts.[7]

**REVERSED AND REMANDED.**

---

[7] Because Martinez was granted judgment of acquittal on count four, "the Double Jeopardy Clause prevents the State from trying to prove its case in a second trial." *See State v. Chapman*, 944 N.W.2d 864, 875 (Iowa 2020).